UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM EARL RAYFORD, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 3:06-CV-0978-B |
| | § | |
| RICK THALER, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE, AND
DENYING A CERTIFICATE OF APPEALABILITY

On July 12, 2011, the United States Magistrate Judge made findings, conclusions and a

recommendation ("F&R", doc. 50) to deny habeas corpus relief in this case. William Earl Rayford

("Rayford" or "Petitioner") has filed objections, and the District Court has made a de novo review

of those portions of the F&R to which objection was made. The objections are **OVERRULED**, the

Court **ACCEPTS** the F&R and **DENIES** Rayford's application for a writ of habeas corpus for the

reasons that follow.

I.

BACKGROUND

This is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Rayford is a Texas

inmate convicted of capital murder and sentenced to death for the violent murder of his former

girlfriend, during which Rayford also beat and stabbed her 11-year-old son who ran for help and later

testified at trial. Vol. 42 of the State Reporter's Record ("RR") 52-63. Rayford was apprehended in

the victim's backyard with blood that matched the victim, whose body was found 300 feet inside a

culvert pipe nearby. 42 RR 113-14; 44 RR 11-13. She had been stabbed, severely beaten, and strangled to death. 44 RR 38, 53-62, 71-72. Punishment-stage evidence showed that Rayford had previously murdered his then-wife, stabbing her repeatedly in front of their children. 47 RR at 23, 43, 99-101, 118-19.

Rayford's conviction and sentence were affirmed on direct appeal. *See Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003). Rayford also filed an application for postconviction writ of habeas corpus on which the trial court made its findings and conclusions to deny relief. The Texas Court of Criminal Appeals adopting the findings and conclusions of the trial court and denied relief. *See Ex parte Rayford*, No. WR-63201-01, 2006 WL 1413533 (Tex. Crim. App. May 24, 2006). The United States Magistrate Judge has made findings and recommends that relief be denied. F&R. Rayford has filed objections to these findings. Obj. Aug. 31, 2011 (doc. 55). Respondent has filed a response in opposition to Rayford's objections. Resp. Sept. 21, 2011 (doc. 56). The F&R and the Rayford's objections are ripe for review.

## II.

## CLAIMS

Rayford objects to the Magistrate Judge's F&R recommending denial of his claims that: (1) his rights to an impartial jury were denied because (a) the jury venire did not reflect a fair cross-section of the community and (b) the trial court improperly denied a challenge for cause; (2) the admission of the testimony of Royce Smithey at trial violated his rights to due process and a reliable and individualized sentencing; and (3) his counsel provided ineffective assistance. He also reasserts three claims that he acknowledges are foreclosed by Circuit precedent and requests that this Court

withhold any ruling on his objections until the Supreme Court issues opinions on two cases pending before it.[1] Respondent opposes each of these claims and requests.

## III.

## LEGAL STANDARD

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute sets forth a number of preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding.

A.    *Exhaustion*

Under this statute, a federal court may not grant habeas relief on any claim that the state prisoner had not first exhausted in the State corrective process available to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 562 U.S. ___, ____, 131 S.Ct. 770, 787 (2011). To satisfy this requirement, a habeas petitioner must have fairly presented the substance of his claim to the state courts, alerting the court to the federal nature of his claim. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997); *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005). The exhaustion requirement is not satisfied if a petitioner "presents material additional evidentiary support to the federal court that was not presented to the state court." *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996). Further, "it is not enough that all the facts necessary to support the federal claim were

---

[1]Obj. at 40-41, 50, 52 (citing *Martinez v. Ryan*, No. 10-10001, __ U.S. ___, 131 S.Ct. 2960 (2011) (granting certiorari regarding right to effective assistance of state habeas counsel ); *Maples v. Thomas*, No. 10-00063, ___ U.S. ____, 131 S.Ct. 1718 (2011) (granting certiorari regarding procedural default due to ineffective assistance of state habeas counsel)). The Supreme Court has issued its decision in one of these cases, *Maples v. Thomas*, ___ U.S. ___, 2012 WL 125438. As set out in Part V of this order, this new holding does not assist Rayford. *See infra* at 24-25.

before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). The claim must be presented "'in terms so particular as to call to mind a specific right protected by the Constitution'" or allege "'a pattern of facts that is well within the mainstream of constitutional litigation.'" *Kittleson*, 426 F.3d at 315 (quoting *Baldwin v. Reese*, 541 U.S. 27 (2004)). However, the federal court may deny relief on the merits notwithstanding any failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

B.      *State-Court Procedural Determinations*

If the state court denies a claim on state procedural grounds, a federal court will not reach the merits of that claim if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). However, if the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must resolve the claim without the deference AEDPA otherwise requires. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is de novo when there has been no clear adjudication on the merits.") (citing *Nobles*, 127 F.3d at 416)); *Mercadel v. Cain*, 179 F.3d 271, 274-275 (5th Cir. 1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claim not adjudicated on the merits by the state court); *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA deferential standard of review would not apply to a procedural decision of the state court).

C.      *State-Court Merits Determinations*

If the state court denies a claim on the merits, a federal court may not grant relief unless it

first determines that the claim was unreasonably adjudicated by the state court, as defined in §

2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim——
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

*Id.* In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a

state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*,

116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief, but restricts

this Court's power to grant relief to state prisoners by barring claims in federal court that were not

first unreasonably denied by the state courts. AEDPA limits rather than expands the availability of

habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412

(2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state

court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 562 U.S. at ____, 131

S.Ct. at 784. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v.*

*Pinholster*, 563 U.S. ____, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. The standard for determining whether a state court's application was unreasonable is an objective one and applies to all federal habeas corpus petitions which, like the instant case, were filed after April 24, 1996, provided that the claims were adjudicated on the merits in state court. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first justifies a finding of unreasonableness under § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, __ U.S. at __, 131 S.Ct. at 1400. The evidence required under § 2254(d)(2) must show that the state-court adjudication

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## IV.

## ANALYSIS

The Court will address Rayford's objections to the Magistrate Judge's F&R in the same order that the Magistrate Judge addressed each of his claims in his F&R.

A.    *Trial Errors*

Rayford complains that his rights to an impartial jury were denied because the jury was drawn from a venire that did not reflect a fair cross-section  of the community, because the trial court denied his challenge of a juror for cause, and because the trial court allowed expert testimony to present misleading prison statistics that created a false impression before the jury in the punishment stage of his trial. Rayford also presented claims regarding the admission of evidence that he was convicted of murder of his then-wife in 1986 and the exclusion of evidence of certain medical records relating to that same murder that have not been made the subject of specific objections.

1.    <u>Fair Cross-Section</u>

Rayford asserts that he was denied his Sixth and Fourteenth Amendment rights to an impartial jury because the venire from which his jury was chosen was not reflective of a fair cross-section of the community of Dallas, Texas. Specifically, Rayford claims that Dallas County's method of convening jury panels results in a systematic exclusion of Hispanics and young adults (*i.e.*, persons 18-34 years old). Am. Pet. at 62-64. In support of his claim, Rayford relies upon a study done by The Dallas Morning News and SMU Law Review and the expert testimony of Dr. Harold Hietala, Ph.D. Am. Pet. at 62-64.

The state habeas court applied the proper standard from *Duren v. Missouri*, 439 U.S. 357 (1979), and *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).[2] *See* 11 SHR at 3307. It concluded that Rayford failed to show that young adults between the ages of 18 and 34 are a distinctive group in the community, that Dallas County venires underrepresent the Hispanics and young adults who are qualified to sit on a jury, or that there was any "systematic exclusion" of these groups. The state court rejected the argument that these groups are systematically excluded because they ignore juror summonses in disproportional numbers due to low juror pay, their economic disparity, and the failure to enforce the jury summonses. 11 SHR 3307-18. These findings and conclusions have not been shown to be incorrect.

In his Objections, Rayford complains that the Magistrate Judge did not address the theory set out on page 67 of the original Application that the intentional failure to enforce jury summonses constitutes a "systematic exclusion." Obj. at 47. This is incorrect. The Magistrate Judge correctly set forth the three elements of such claims from *Duren*, 439 U.S. at 363-64, as follows:

> In order to establish a prima facie Sixth Amendment violation, a defendant must show that: (1) the excluded group is a distinctive group in the community; (2) representation of the group in venires from which juries are selected is not fair and reasonable in relation to their number in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.

F&R at 5 (citing *Duren*, 439 U.S. at 364). Contrary to the Objections, the Magistrate Judge specifically addressed the argument of a systematic exclusion in light of *Taylor v. Louisiana*, 419 U.S. at 530. In contrast to the policy in *Taylor* to specifically exempt women from jury service, the

---

[2]The state habeas court found that this claim was procedurally barred for failing to make a timely objection, but proceeded to the merits of this claim in the alternative. Vol. 11 of the State Habeas Record ("SHR") at 3307.

Magistrate Judge observed: "No comparable law or policy pertaining to young adults or Hispanics exists in this case. At most, their underrepresentation on Dallas County venire panels is an indirect consequence of low juror pay and the failure to enforce jury summonses." (F&R at 6.)

This is virtually identical to a claim found meritless in *Rivas v. Thaler*, 432 Fed. Appx. 395 (5th Cir. 2011).

> Rivas contends that low juror pay and Dallas County's lack of enforcement of its summonses is to blame for the disparate turnout. But the fact that certain groups of persons called for jury service appear in numbers unequal to their proportionate representation in the community does not support Rivas's allegation that Dallas County systematically excludes them in its jury selection process. Such an occurrence does not constitute the type of affirmative barrier to selection for jury service that is the hallmark of a Sixth Amendment violation.

*Id.* at 402-403. The Court of Appeals expressly rejected the argument that a "systematic exclusion" under *Duren* could be shown by the sort of economic discrimination argued in the study, but would instead constitute a new rule of Constitutional law that would be barred by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 310–13 (1989). 432 Fed. Appx. at 403 (citing *Castaneda v. Partida*, 430 U.S. 482, 491 n. 11 (1977)); *see also Berghuis v. Smith*, __ U.S. __, 130 S.Ct. 1382, 1396 n.6 (2010) ("We have also never 'clearly' decided, and have no need to consider here, whether the impact of social and economic factors can support a fair-cross-section claim."). In conclusion, the Court of Appeals held that "Rivas has not shown that any underrepresentation of Hispanics or persons 18 to 34 on his jury venire was due to their 'systematic exclusion in [Dallas County's] jury-selection process.' Thus, he has failed to establish a prima facie violation of the fair cross-section requirement." 432 Fed. Appx. at 403 (citations omitted). These same reasons support the Magistrate

Judge's recommendation to deny relief on this claim.[3] *See* F&R at 6-7. Accordingly, Rayford's fair-cross-section claim is **DENIED**.

    2.    <u>Challenge for Cause</u>

    Rayford claims that he was denied his rights to an impartial jury under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the trial court denied Rayford's challenge for cause to prospective juror Diane Potts. Am. Pet. at 71-76; Obj. at 42-45. Rayford raised this claim in his direct appeal.

    The state court observed that after the trial court overruled Rayford's challenge for cause, the juror was removed with a peremptory strike. *See Rayford v. State*, 125 S.W.3d at 532. The state court then determined that the trial court did not abuse its discretion in denying the challenge for cause because Rayford had not sustained his burden to show that the challenged venireperson would be substantially impaired in her ability to follow the law.

    Rayford argues that his challenge for cause should have been granted so that he would not have had to use the peremptory strike that he exercised on Potts, and that he has done all that is required to preserve this issue for appeal in Texas courts. Obj. at 44-45. However, this asserts the wrong standard and one that is inapplicable to the determination of federal habeas corpus relief.

    The Magistrate Judge applied the correct standard in recommending the denial of this claim because where, as here, "a challenged juror is removed by use of a peremptory challenge following the trial court's denial of a challenge for cause, a petitioner is entitled to federal habeas relief only

---

[3]Although not raised by Respondent in his answer, the state habeas court found this claim to be procedurally barred from habeas review because the objection to the venire was not made at the trial. 11 SHR 3307. Had this defense been asserted, it would have barred a review of the merits of this claim in federal court as well. *See Turner*, 481 F.3d at 300-01.

if he demonstrates that the jury ultimately selected to try the case was not impartial." F&R at 7

(citing *Dorsey v. Quarterman*, 494 F.3d 527, 533 (5th Cir. 2007) and *Ross v. Oklahoma*, 487 U.S. 81,

88 (1988)). Since the challenged juror did not serve and Rayford has not shown that the jury

ultimately selected was not impartial, this claim lacks merit and is **DENIED**.

3.      Evidence of 1986 Murder Conviction

Rayford also claimed that he was denied due process when the trial court admitted evidence

in the punishment stage of his trial that he was convicted of the murder of his wife in 1986. Am. Pet.

at 53-59. The Magistrate Judge recommended the denial of this claim. F&R 8-11. Rayford's

objections do not address those findings and conclusion, even though he has objected to the denial

of a related ineffective-assistance-of-counsel claim. Had he objected, the Court finds that Magistrate

Judge's findings and conclusion are proper and are reviewed in the alternative. *See Douglass v. United*

*Servs. Auto Ass'n*, 79 F.3d 1415, 1420, 1428-29 (5th Cir. 1996).

Rayford claims that the conviction was inadmissible because his plea of no contest was not

knowingly, voluntarily and intelligently made and because it was the result of the ineffective

assistance of his counsel in 1986. Am. Pet. at 53. The state habeas court found that Rayford had not

overcome the presumption of regularity that attached to the recitals in the judgment.[4] 11 SHR at

3275-76. The state court also considered the psychiatric evidence and found credible the report of

E. Clay Griffith, M.D., the forensic psychiatrist that evaluated Rayford at the time of the plea that

Rayford was of average intelligence, was competent to stand trial, and was not suffering from a severe

---

[4]The state habeas court found that this claim was procedurally barred and barred by laches for waiting
17 years without explanation to challenge the prior conviction. 11 SHR at 3266-71. It proceeded to the merits
of this claim in the alternative.

mental disease or defect at the time of the offense. 11 SHR at 3272-74, 3278-81. The state court also found that the report of Dr. Gilda Kessner made 17 years later failed to present sufficient credible evidence to rebut Dr. Griffith's contemporaneous report. 11 SHR at 3278-81. The state court concluded that Rayford was mentally competent, and it concluded that he knowingly, voluntarily and freely entered his 1986 plea. 11 SHR at 3282. The state court also extensively reviewed the claims regarding his counsel in 1986, found that they did not provide ineffective assistance, and found that prejudice had not been shown. 11 SHR at 3283-94.

The Magistrate Judge found that federal habeas relief is generally not available to challenge a prior conviction used to enhance a criminal sentence after the prior conviction is no longer open to direct or collateral attack. F&R at 8-9 (citing *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402-404 (2001)). The Magistrate Judge also reviewed the psychiatric evidence and found that Rayford failed to sustain his burden to prove that he was mentally incompetent at the time he entered his 1986 plea. F&R at 9-10. Finally, the Magistrate Judge concluded that even if this claim were not barred by precedent, Rayford has not shown that his counsel in 1986 provide ineffective assistance.

No error appears in these findings and recommendation. Therefore, this claim lacks merit and is **DENIED**.

4.    Parkland Hospital Medical Records

Rayford also claims that he was denied his Eighth and Fourteenth Amendment rights to a reliable and individualized sentencing when the court excluded his Parkland Hospital medical records. Am. Pet. at 46-53. The Magistrate Judge recommended the denial of this claim. F&R at 11-12. Again, Rayford has not objected to those portions of the findings and recommendation even

though he has objected to the denial of a related ineffective-assistance-of-counsel claim. Even if he had objected, the Magistrate Judge's findings and conclusion are proper and are reviewed in the alternative. *See Douglass*, 79 F.3d at 1428-29.

The state habeas court found that this claim lacked merit because the records were not admissible.[5] 11 SHR at 3255-57. The state court also found that the exclusion of these records did not harm Rayford because the jury heard the mitigating information in these records through other means and because any remorse in these records was for the prior murder in 1986 and not the murder on trial. 11 SHR at 3257-59.

The Magistrate Judge applied the correct standard from *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) and *Byrne v. Butler*, 845 F.2d 501, 517 n.14 (5th Cir. 1988) (citing *Skipper v. South Carolina*, 476 U.S. 1, 5-6 (1986)). Although he found that the evidence was arguably not mitigating, the Magistrate Judge concluded that the trial court did not violate Rayford's right to individual sentencing because the exclusion of this evidence was based on the evenhanded application of an evidentiary rule which did not prevent Rayford from proffering or re-urging the evidence.

Again, no error appears in these findings. Therefore, this claim lacks merit and is **DENIED**.

5.    Testimony of Royce Smithey

Rayford also complains that a state's expert witness, Royce Smithey, was allowed to present misleading statistics to the jury about the frequency of serious assaults in prison by inmates. Obj. at 42, 45-46. Rayford raised this claim in his state habeas application.

---

[5]The state habeas court found that this claim was procedurally barred because it was a record-based claim that could have been made but was not made in the direct appeal. 11 SHR at 3254-55. It proceeded to the merits in the alternative.

The state habeas court observed that Smithey, the Chief Investigator for the Special Prison Prosecution Unit, was called by the state to rebut a portion of the testimony of Dr. Gilda Kessner dealing with prison life and statistics concerning violent incidents in prison.[6] 11 SHR 3214-18. The state court stated the correct standard for the resolution of this claim under *Napue v. Illinois*, 360 U.S. 264 (1959), and found that Rayford did not prove that the testimony was actually false or misleading. 11 SHR 3220, 3222, 3224-27, 3229.

The Magistrate Judge noted that the statistics reflected in Smithey's testimony comport with the Emergency Action Center ("EAC") report upon which the testimony was based, and the omission of more detailed statistical information related to these assaults did not render Smithey's testimony false.[7] F&R at 20 (citing to record of Smithey's trial testimony, the state habeas record and findings). Therefore, Rayford did not establish even the first element of his due process claim. F&R at 19 (citing *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994)).

The Magistrate Judge properly recommended that relief on this claim be **DENIED**.

_____

[6] As noted by the Magistrate Judge, Rayford made four distinct claims regarding this witness. F&R at 13-20. However, in his objections, he only objects to the recommended denial of his fourth claim. Obj. at 42. "Rayford's claim is that the prison expert–Smithey–was allowed to present generalized data about assaultive behavior and the prevalence of drugs and weapons in the Texas prison system as a whole without tailoring the risk factors to address inmates like Rayford. The underlying fallacy in the data is the implication that any assault is an 'act of violence' within the meaning of the first special issue." Obj. at 45. Therefore, the claims that the testimony violated his right to individualized sentencing, that the testimony was irrelevant, and that the witness was unqualified to provide expert testimony are waived.

[7] Rayford also complains that the Magistrate Judge relied upon the failure of state habeas counsel to include in the habeas court record the more detailed records referenced by her expert Dr. Mark Cunningham, and he requests that a ruling on this objection be deferred until the Supreme Court rules on cases involving the ineffective assistance of state habeas counsel. Obj. at 46-47. However, even the inclusion of more detailed records before this court than were before the state court would not establish a right to federal habeas relief under 28 U.S.C. § 2254(d). *See Pinholster*, 131 S.Ct. at 1400.

- 14 -

B.      *Prosecutor's Comment*

Rayford also claimed that the prosecutor improperly commented on his failure to testify in arguing a lack of remorse. Am. Pet. at 59-60. The Magistrate Judge recommended the denial of this claim. F&R at 20-21. Rayford's objections do not address these finding or conclusion, but even if they did, the Magistrate Judge's findings and conclusion are proper. Therefore, the Court reviews these findings and conclusion in the alternative. *See Douglass*, 79 F.3d at 1428-29.

The state habeas court found that the prosecutor's argument was not a comment on the defendant's failure to testify.[8] 11 SHR at 3264-65. It pointed out that the prosecutor did not refer to remorse in particular, but merely argued that defense counsel "didn't spend much time on the mitigation question, simply because there is not mitigation in this case." 11 SHR at 3264-65 (citing 47 RR 201-02.

The Magistrate Judge observed that this argument merely asserted the absence of a substantial mitigation case and did not constitute a Fifth Amendment violation. F&R at 20-21 (citing *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) and *Brock v. McCotter*, 781 F.2d 1152, 1159-60 (5th Cir. 1986)). No error appears in these findings. Therefore, this claim lacks merit and is **DENIED**.

C.      *Claims Foreclosed by Circuit Precedent*

Rayford also objects to three claims that he concedes were denied in accordance with the prevailing case authority in this Circuit. Obj. at 36. These include his complaints (1) that the trial court's instructions to the jury did not inform them that a lack of unanimity in their verdict on the

---

[8]The state habeas court found that this claim was procedurally barred for lack of a contemporaneous objection at trial. 11 SHR at 3263. It proceeded to consider the merits in the alternative.

special issues would result in a life sentence, Am. Pet. at 70-71 (*contra Alexander v. Johnson*, 211 F.3d 895, 897 n. 5 (5th Cir. 2000) (per curiam)); (2) that the trial court's instructions allowed the jury to assess a death penalty on an unconstitutionally low burden of proof–that there is a "reasonable probability" of future dangerousness, Am. Pet. at 76-78 (*contra Rowell v. Dretke*, 398 F.3d 370, 378-379 (5th Cir. 2005)); and (3) that the Eighth Amendment prohibits the execution of the mentally ill, Am. Pet. at 61-62 (*contra ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007); *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006)). This Court agrees with the recommendation of the Magistrate Judge. *See* F&R at 21-25. These claims are **DENIED**.

D.    *Ineffective Assistance of Counsel*

      Rayford claims that his trial counsel was ineffective in the punishment phase of his trial for (1) failing to prevent the admission into evidence of his 1986 conviction for murder, (2) failing to admit into evidence his medical records pertaining to that same murder, and (3) failing to adequately investigate and present a mitigation case.[9]

     1.    AEDPA Review of *Strickland* Claims

      The Magistrate Judge properly set forth the two-pronged standard from *Strickland v. Washington*, 466 U.S. 668 (1984), by which a claim of ineffective assistance of counsel is measured. The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. The second prong of this test requires the defendant to show prejudice

---

    [9]Rayford also claims that he received ineffective assistance of counsel because his counsel did not object when the prosecutor commented on his failure to testify, his counsel failed to challenge the composition of the venire panel, and his counsel failed to raise various claims related to the testimony of Royce Smithey. Am. Pet. 29-31, 68-70. Because the Court has rejected Rayford's underlying claims regarding the composition of the jury, the testimony of Royce Smithey, and the prosecutor's comment, *see* sections IV(A)(1), IV(A)(5), and IV(B), *supra*, the Court also rejects his claims that he received ineffective assistance of counsel based on his counsel's failure to raise these objections or claims.

resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697, 700.

Further, because these claims were adjudicated on their merits in the state courts, the presumption of competence required in *Strickland* combined with the deference required under § 2254(d) makes this Court's review of the state court's denial of these claims "doubly deferential." *Pinholster*, 131 S.Ct. at 1402. Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir.), *cert. denied*, ___ U.S. ___, 131 S.Ct. 265 (2010). In the federal habeas review of a *Strickland* claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and not whether the reviewing court itself believes trial counsel's performance violated *Strickland*'s standards. *See Harrington*, 131 S. Ct. at 785. In other words, AEDPA does not permit a *de novo* review of state trial counsel's conduct in these claims under *Strickland*. *Id.* Instead, on federal habeas review of a claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

2.      Failure of Trial Counsel to Prevent Admission of Records

Rayford complains trial counsel was ineffective in the punishment stage for failing to prevent the admission into evidence of a "pen packet" reflecting a conviction and prison sentence for the 1986 murder because the plea was involuntary due to mental illness. Am. Pet. at 3, 24-25 [related claim at 53-59]; Obj. at 2, 35-36. Rayford presented this claim in his state habeas application.

The state habeas court found that Rayford's 1986 conviction was not the result of an involuntary, unknowing, or incompetent plea. 11 SHR at 3294. The state court also found that the pen packet was regular on its face, and the recitals in the judgment and other documents signed by Rayford created a presumption of regularity that were not rebutted in the state court proceeding. *Id.* at 3294-95. The state court also found that Rayford's trial attorneys did not object to the admission of the pen packet because it was not objectionable, *id.* at 3295, and due to reasonable trial strategy because it contained evidence of his excellent prison disciplinary record, *id.* at 3295, 3298. The state court concluded that trial counsel were not ineffective. *Id.* at 3298.

Petitioner relies upon the opinion of his mitigation expert (made 17 years after the plea) that he had been suffering from depression that would have compromised his critical-thinking and decision-making abilities. Obj. at 21; 2 SHR 280. However, the record before this Court includes an expert psychiatric evaluation of competency that appears fully sufficient to support the contemporaneous findings of competency and the state habeas court's findings regarding the admissibility of the evidence of conviction.[10] 2 SHR 256-60; 9 SHR 2700-02, 2732-33; 11 SHR 3271-82. This does not establish incompetency, would not overcome the presumption of validity of the conviction, and would not justify excluding the evidence. Trial counsel was not ineffective for failing to make a meritless objection. *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Green*

---

[10]In his objections, Rayford also claims that state habeas counsel was ineffective for failing to develop evidence to discredit Dr. Clay Griffith, the forensic psychiatrist that made the competency evaluation in 1986. Obj. at 35-36. Rayford now requests that this Court withhold a ruling on this objection until the Supreme Court rules on other cases expected to address the ineffective assistance of state habeas counsel. However, Rayford does not identify any pertinent information to discredit Dr. Griffith that state habeas counsel failed to present. The requested delay is not warranted.

*v. Johnson*, 160 F.3d at 1037. The Magistrate Judge's recommendation is correct. This claim is **DENIED** for lack of merit.

> 3.    Failure of Trial Counsel to Have Records Admitted

Rayford also complains that trial counsel was ineffective for failing to offer into evidence voluminous medical records from Parkland Hospital (Dallas County Hospital District) pertaining to his attempted suicide following that earlier murder.[11] Am. Pet. at 25-27 [related claim at 46-53]; Obj. at 2-3, 10-11.

The state habeas court found that the pertinent information contained in those medical records was submitted to the jury through the testimony of Dr. Gilda Kessner (a defense expert), Officer Thomas E. Hitt (a state's witness), and applicant's TDCJ records (Defense Exhibit 3). 11 SHR 3252-53, 3257, 3259. The state court also found that Rayford failed "to point out any information in the medical records that the jury did not hear about through an alternative means and which was so crucial to the case that the jury's failure to see the actual piece of paper contributed to his punishment." 11 SHR 3258. The court continued:

> 189. The Court finds nothing in the medical records attached to the writ application that adds any significant information to what the jury heard. In this regard, the medical records present the information in a form that is comparatively incomprehensible to the average non-medical professional.
>
> 190. Thus, the Court finds that the jury received the information in a more understandable format and did not lack any information regarding applicant's suicide attempt.

---

[11]The claim in the Amended Petition focuses on the Parkland Hospital medical records, as did the state habeas application. To the extent that the Objections attempt to include more records in this claim than are reflected in the petition before this court, leave has not been granted to amend the pleadings to include any matters not exhausted in the state court.

11 SHR 3258. The state court concluded that Rayford failed to prove that trial counsel was ineffective for failing to have these records admitted and failed to show that the absence of these records undermined confidence in the outcome of the trial. 11 SHR 3261-62.

Rayford alleges that the admission of these medical records would show remorse for that earlier crime.[12] Am. Pet. at 25, 27; Obj. at 17-19. The state court noted the limited value of such evidence because the "remorse" was not for the instant murder, and the existence of such remorse did not prevent the subsequent murder. 11 SHR 3258-59. The Magistrate Judge observed, "[i]t strains credulity to suggest that the jury would have viewed petitioner in a more favorable light because he showed remorse for a murder committed more than 14 years earlier." F&R at 28.

The state-court findings are consistent with this Court's own review of those records. In addition, of the approximately 116 pages of medical records,[13] less than half (approximately 49 pages) appear directly pertinent to Mr. Rayford's injuries sustained in connection with the murder of his wife in June of 1986. 2 SHR 285-404. The remainder appear to be from different periods in his life and pertain to myriad injuries which may be inadmissible and even prejudicial to the petitioner. Finally, many of the records of other injuries are intermingled with the records from the June 1986 incident, making it more difficult for jurors to keep track of which injuries pertain to which date. Therefore, the state-court findings are entitled to deference and have not been shown incorrect. The

---

[12]The claim in the Amended Petition asserts that these medical records show critical evidence of remorse that was not adequately presented elsewhere, as was presented in the state habeas application. To the extent that the Objections attempt to expand the allegation of prejudice, leave has not been granted to amend the pleadings to include any matters not exhausted in the state court.

[13]Exhibit 8A attached to Dr. Kessner's affidavit in the state court records includes an affidavit from the custodian of records for the Dallas County Hospital District that there were 119 pages of records attached. 2 SHR at 286. However, there followed only 116 pages of such records.

state court's adjudication of this claim is neither contrary to nor an unreasonable application of established federal law, nor is it based on an unreasonable determination of fact. The Magistrate Judge's recommendation on this claim is correct. This claim is **DENIED**.

    4.      Failure of Trial Counsel to Obtain Forensic Medical Examiner

Rayford also claimed that the prosecutor improperly commented on his failure to testify in arguing a lack of remorse. Am. Pet. at 28-29. The Magistrate Judge recommended the denial of this claim. F&R at 28. Rayford's objections do not address these finding or conclusion, but even if they did, the Magistrate Judge's findings and conclusion are proper. Therefore, the Court reviews these findings and conclusion in the alternative. *See Douglass*, 79 F.3d at 1428-29.

The Magistrate Judge correctly observed that Rayford has not made the showing required to prove this claim. F&R at 28 (citing *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)). No error appears in these findings. Therefore, this claim lacks merit and is **DENIED**.

    5.      Failure of Trial Counsel to Present Adequate Mitigation Case

Rayford also complains that trial counsel failed to adequately develop and present a case in mitigation by failing to obtain a "mitigation specialist" and by failing to present a more complete view of his background and mental health, including his "abandonment rage" resulting from his mother's absence after a divorce and her inappropriate sexual behavior with suitors. Am. Pet. at 2-3, 11-24; Obj. at 2-33.

The state court found that trial counsel was aware of this mitigation strategy and obtained the assistance of Dr. Gilda Kessner, who investigated, evaluated and presented evidence of Rayford's background and mental health at trial. 11 SHR 3295-96. The state court also found that Rayford and his siblings prevented his trial counsel from more fully developing and presenting evidence of

these additional mental health issues in an effort to protect their mother from embarrassment. 11 SHR 3296 (referencing Ashford Aff. at 10 SHR 3066). Rayford has not shown this to be incorrect. *See* 28 U.S.C. § 2254(e)(1).

Rayford's present complaints rely upon this same expert, Dr. Kessner. Her affidavit states that she has been recognized as a psychological expert witness regarding sentencing determination issues, including mitigation and future dangerousness in state courts in Texas, has testified in capital sentencing proceedings, and has presented at defense attorney training seminars in Texas regarding psychological issues relevant to capital sentencing. 2 SHR 271. Therefore, to the extent that Rayford complains that his trial counsel failed to obtain a sufficient mitigation specialist, his own evidence suggests otherwise.

Dr. Kessner's affidavit also indicates that Rayford's "abandonment rage" theory was known and available even to his attorney in the prior 1986 trial. 2 SHR 281. She does not claim to have had any difficulty investigating Rayford's case or have suffered any lack of opportunity to adequately prepare or advise Rayford's trial counsel in the 1999 trial. In fact, her trial testimony (both before and outside the presence of the jury) indicated that in preparation she had extensively reviewed the same records (about 1,200 pages), read the applicable literature, and conducted interviews of Rayford and others that were sufficient in length and quality for her to form the conclusions and opinions about which she testified. 46 RR 76, 111-12, 143; 47 RR 34-38, 41.

Further, the trial record does not indicate that she was confined in her testimony to only those records that had been admitted into evidence. 46 RR 111-12, 123, 142-43, 173-75, 181-85; 47 RR 21-27, 35-38. She was permitted to testify regarding Rayford's history of paternal abandonment and substance abuse, 46 RR 120-21, 127, 137-38; being raised by a single mother who

worked two jobs, 46 RR 121, 127; being left in the care of siblings that may have abused drugs and/or went to prison, 46 RR 127, 139, 140; being unprotected from a harmful environment, 46 RR 120-21, 139; being exposed to adult sexual activities – including those of his mother – that were inappropriate for his age and development, 46 RR 121, 132-33, 135-36, 138; being sexual abused himself, 46 RR 132, 133-35, 139; and being exposed to domestic violence as a child and adolescent, 46 RR 121-23, 138-39. She opined about the long-term psychological, emotional, physical and cognitive effects of this history of abuse and neglect. 46 RR 123-42. She used the metaphor of a house with a bad foundation illustrated through a visual aid. 46 RR 106, 117-18, 137. She also testified about Rayford's own substance abuse, 46 RR 120-21, 126, 130, 139, 141; his academic and social failures, 46 RR 141-42; his depression, 46 RR 123-26, 142; and the details of his self-inflicted wounds and attempted suicide following the murder of his wife. Other evidence was admitted showing Rayford's attempted suicide, 47 RR 101-03; and the "overkill" connected with the "abandonment rage" theory, 44 RR 38-53, 62-63, 68-73; 47 RR 115-19. Based on this record, Dr. Kessner would also have been able to explain to Rayford's trial counsel, and convey to the jury any "abandonment rage" mitigation case. 2 SHR 281. There is no indication that she was constrained from doing so.

The state court found that Rayford's trial counsel's representation was not shown deficient and that Rayford was not deprived of the effective assistance of counsel in the investigation and presentation of mitigating evidence at the punishment stage of his trial. 11 SHR 3295-96, 3298. These findings are consistent with the record and entitled to deference. Rayford's claims of ineffective assistance of counsel are **DENIED**.

E.      *Cumulative Error*

Rayford also presented a cumulative error claim. Am. Pet. at 78-79. The Magistrate Judge

also recommended that this claim be denied, F&R at 35, but no objections have been made. Even

if an objection was made, this finding and conclusion are proper.

Because Rayford failed to establish any error, the Magistrate Judge recommended that this

claim be denied as well. F&R at 35 (citing *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000)).

This is a correct conclusion. The cumulative error claim also lacks merit and is **DENIED**.

## V.

## REQUEST TO WITHHOLD DETERMINATION

In his Objections, Rayford also complains that the Magistrate Judge's findings and

recommendation were based, at least in part, on the failure of state habeas counsel to investigate and

present these claims in the state court. Acknowledging that any such failures are presently

unreviewable, Rayford nonetheless requests that this Court delay ruling on his objections until the

Supreme Court rules on two cases in which it granted certiorari involving the ineffective assistance

of state habeas counsel. Obj. at 35-36, 45, 46-47 (citing *Martinez v. Ryan*, 131 S.Ct. at 2960, and

*Maples v. Thomas*, 131 S.Ct. at 1718)). Rayford has not, however, produced any evidence or legal

theories that were not presented by state habeas counsel that would otherwise entitle him to relief

in these proceedings should they become reviewable. Further, the Supreme Court has issued its

opinion in one of these cases and it does not help Rayford.

On January 18, 2012, the Supreme Court issued its opinion in *Maples v. Thomas*, ___ U.S.

___, 2012 WL 125438, in which it recognized that the attorneys' abandonment of their client

severed the agency relationship and constituted "cause" to excuse a procedural default created when

a state appeal deadline was missed. *Maples* did not disturb the general rule that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'" to excuse a procedural default. 2012 WL 125438, at *10. Instead, the Court distinguished the negligence of counsel from a complete abandonment that severs the agency relationship and terminates the lawyer's authority to act for the client. The Court observed that "when an attorney abandons his client without notice, and thereby occasions the default," that conduct severs "the principal-agent relationship" such that the "attorney no longer acts, or fails to act, as the client's representative." *Id.*

Rayford alleges that his state habeas counsel was negligent in failing to investigate and properly develop evidence that his 1986 conviction for murder should not have been admitted because he was not mentally competent at the time of that plea. Obj. at 35-36. Rayford also complains of the neglect of the state habeas counsel to fully develop the evidence attributable to an unacceptable juror in connection with his claim that the trial court overruled a challenge for cause. Obj. at 45. Rayford also complains that state habeas counsel failed to attach a more detailed report showing that the testimony of a prosecution expert, Royce Smithey, overstated the prevalence of assault in prison. Obj. at 46-47. Construed in a light most favorable to Rayford, these allegations would only allege ordinary negligence and not the complete abandonment that is required in *Maples*.

Rayford has not shown any reasonable likelihood that a delay would change the outcome of these proceedings. Therefore, the requested delay is **DENIED**.

## VI.

### CONCLUSION

The petition for writ of habeas corpus is **DENIED**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court **ADOPTS and INCORPORATES by reference** the Magistrate Judge's Findings, Conclusions and Recommendation (F&R) filed in this case in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the event, the petitioner will file a notice of appeal, the court notes that

(X)     the petitioner will proceed *in forma pauperis* on appeal.

( )     the petitioner will need to pay the $455.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.


**SO ORDERED.**

**SIGNED: January 25, 2012.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE