# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **WILLIAM EARL RAYFORD,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | |
| | § | NO. 3:06-CV-0978-B |
| **WILLIAM STEPHENS, Director** | § | |
| **Texas Department of Criminal Justice,** | § | (Death Penalty Case) |
| **Correctional Institutions Division** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER
## ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE, AND
## <u>DENYING A CERTIFICATE OF APPEALABILITY</u>

This is a habeas corpus petition under 28 U.S.C. § 2254 brought by William Earl Rayford ("Petitioner" and "Rayford"), a Texas inmate convicted of capital murder and sentenced to death. This case was remanded from the United States Court of Appeals for the Fifth Circuit to reconsider Rayford's ineffective-assistance-of-counsel claim, and whether to stay this proceeding to allow the claim to be presented to the state court.

After a full reconsideration of Rayford's claim, the Court **DECLINES** to stay these proceedings. After a de novo review, Rayford's objections are again **OVERRULED** and the applicable portions of the findings conclusions and recommendation of the United States Magistrate Judge are again **ACCEPTED**. The Court **DENIES** Rayford's application for a writ of habeas corpus for the reasons that follow.

## I.

## BACKGROUND

Rayford was convicted of capital murder and sentenced to death for beating, stabbing, and strangling his former girlfriend to death, during which he also beat and stabbed her young son. More than thirteen years earlier, Rayford had murdered his wife by stabbing her repeatedly in front of their children, and then stabbed himself and jumped out of a second-story window in an apparent suicide attempt. 47 RR 23, 43, 99-101, 118-19. Rayford argues that his trial counsel failed to discover and properly present his medical records following the first murder and the related prison and jail records that would show his remorse for the first murder and mental problems that would have been mitigating evidence at his trial.

Rayford's conviction and sentence were affirmed on direct appeal. *See Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003). Rayford also filed an application for a postconviction writ of habeas corpus in state court and the trial court made findings and conclusions to deny relief. The Texas Court of Criminal Appeals adopted the findings and conclusions of the trial court and denied relief. *See Ex parte Rayford*, No. WR-63201-01, 2006 WL 1413533 (Tex. Crim. App. May 24, 2006).

On July 12, 2011, the United States Magistrate Judge made his findings and recommendation to deny relief. Recommendation, doc. 50. Following orders granting extensions of time, Rayford filed his objections to the Recommendation on August 31, 2011. Objections, doc. 55. These objections framed the claims differently than the original or amended petition, apparently anticipating future Supreme Court action. In these objections, Rayford complained that his mitigation claims were not properly preserved because of the ineffective assistance of state habeas counsel, pointed to grants of certiorari by the Supreme Court in two cases to address whether the

failure of state habeas counsel could allow the federal court to consider such claims, and asked this Court to withhold entry of a final order until the Supreme Court issued its opinion in those cases. Obj., 35.  On January 25, 2012, this Court denied the request to delay its ruling and adopted the recommendation of the United States Magistrate Judge to deny habeas relief.  Mem. Op., doc. 57; Judgment, doc. 58.

During the appeal, the Supreme Court issued its opinions in *Martinez v. Ryan,* 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), and the Court of Appeals vacated this Court's prior judgment and remanded, "for full reconsideration of the Petitioner's ineffective assistance of counsel claim in accordance with both [*Trevino v. Thaler*] and *Martinez v. Ryan*." *Rayford v. Stephens,* 552 Fed.Appx. 367 (5th Cir. Jan. 21, 2014).  The Court of Appeals also instructed: "If the Petitioner requests it, the district court may in its discretion stay the federal proceeding and permit the Petitioner to present his claim in state court." *Id.*  On remand, this Court requested further briefing (Order, doc. 71), and afforded an additional opportunity for Rayford to identify any unexhausted and procedurally barred claims and evidence.  Order, doc. 77.  Based on the additional supplemental briefing (Add. Supp. Br., doc. 79) and this Court's review of the pleadings and record, relief is denied.

## II.

## CLAIM

In seeking to stay these proceedings to pursue additional litigation, Rayford attempts to identify a viable claim within the procedural ruling of *Martinez* and *Trevino*.  This requires him to identify a substantial ineffective-assistance-of-trial-counsel claim that was not presented to the state court due to the ineffective assistance of his state habeas counsel and that is arguably within the

scope of the petition before this Court.  The claim that he has identified, however, is neither within the scope of his petition nor unexhausted.

### A. Identification of the Claim

In his additional supplemental briefing, Rayford identifies the "unexhausted" claim in different ways, but appears to emphasize the failure of trial counsel to have admitted at trial the Parkland Hospital medical records, particularly regarding his injuries following the first murder.

He first identifies the claim "that his trial counsel was ineffective for failing to *offer* into evidence mitigating medical records from Parkland Hospital."  Add. Supp. Br., 1 (emphasis added).  The record indicates, however, that trial counsel did offer these records into evidence as Defendant's Exhibit 4, but that the trial court sustained the prosecutor's objection because the proper predicate had not been made.  46 RR 183.  Therefore, this Court will construe this complaint to mean that trial counsel did not *properly* offer these records into evidence in an admissible form.

Later in his supplemental pleading, Rayford restates the claim as "trial counsel was ineffective in failing to introduce Rayford's Parkland medical records, *and prison medical records,* as mitigating evidence."  Add. Supp. Br., 2 (emphasis added).  Yet another version of this claim adds "jail" medical records and states that such records were used by state habeas counsel to show that Rayford's 1986 plea was involuntary.  Add. Supp. Br., 3, 13.  To fully consider this claim, and how it may differ from what was presented earlier to this Court and to the state court, the most comprehensive version of the reformulated claim will be considered, including each of these aspects, as follows:  Rayford claims that his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial.

### B. Pleadings and Exhaustion

Although the claim Rayford now identifies is not clearly presented in his original or amended petition, it appears to have been exhausted in the state court. In arguing that this precise claim was not presented to the state court, Rayford acknowledges that the same evidence supporting it was presented there.

> This claim of ineffectiveness is unique in that, at first glance, it appears to present nothing new. The records Rayford now points to were before the state court, and thus this Court; Rayford pleaded with this Court to consider them in his objections to the magistrate's recommendation to reject Rayford's previous federal habeas counsel's claim as to the Parkland records and their evidence of Rayford's remorse (Obj. at 8-22); and, ostensibly, this Court has already rejected a claim that trial counsel failed "to Present [an] Adequate Mitigation Case." (Order at 21). This Court's previous consideration of Rayford's claims was restricted to those issues raised in his state application, however, *see Ibarra v. Thaler,* 687 F.3d 222, 227 (5th Cir. 2012), and never did state habeas counsel more broadly complain that his trial counsel was ineffective in failing to introduce Rayford's Parkland and prison/jail medical records as mitigating evidence. Rayford's state habeas counsel only complained of trial counsel's failure as to the Parkland records for the specific purpose of showing remorse, and the other records for the purpose of showing Rayford's 1986 plea was involuntary; lost by the wayside was the far more significant deficiency. This claim, then, that was once procedurally barred, is now, in the wake of *Trevino,* ripe for consideration.

Add. Supp. Br., 2-3. The "far more significant deficiency" appears to refer to the ways that the records could support an "abandonment rage" theory. Rayford acknowledges that the same records relied upon in this claim were presented to the state court, but argues that this precise formulation of the claim is not exhausted and that his state habeas counsel was deficient in failing to present it.

To exhaust a federal habeas claim, it must have been fairly presented to the state court.

> "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998). For a claim to have been fairly presented, the state court must "be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam).

*Canales v. Stephens*, ___ F.3d. ____, 2014 WL 4290612, at *18 (5th Cir. Aug. 29, 2014). Rayford's most recent formulation of the claim attempts to distinguish the claims presented by state habeas counsel in two respects: (1) the Parkland hospital records should have been introduced at trial for a broader mitigation purpose than merely "remorse" and (2) the prison/jail medical records should also have been introduced at trial as mitigating evidence. Although this may distinguish the claim from what Rayford presents to this Court in his amended petition, it does not sufficiently differ from what was presented to the state court to render the claim unexhausted.

In his amended petition before this Court, Rayford asserts that trial counsel's performance was deficient in six listed ways, as follows: (1) "Trial Counsel Did Not Conduct a Reasonable Investigation of Mitigating Evidence," Am. Pet., 12-24, (2) "Trial counsel failed to object to the admission of the 1986 conviction during the penalty phase," Am. Pet., 24-25, (3) "Trial counsel failed to get the medical records of Rayford admitted into evidence," Am. Pet., 25-28, (4) "Trial counsel failed to effectively challenge or controvert the testimony of the state's medical examiner," Am. Pet., 28-29, (5) "Trial counsel failed to object to the improper comment of the prosecutor during the closing argument of the punishment trial," Am. Pet., 29-30, and (6) "Trial counsel failed to object to or challenge the composition of the venire," Am. Pet., 30-31. To the extent that the fine parsing of this claim as reformulated in the additional supplemental briefing is a meaningful distinction, it is not included in any of the above-listed claims in the original or amended petition before this Court.

In this Court's order for additional supplemental pleading, Rayford was instructed to cite to the language in the pleadings before this Court that referenced the claim he contends is unexhausted. Order, doc. 77, 7. In response, Rayford only identified language from his objections

to the findings and recommendation of the Magistrate Judge. Add. Supp. Br., 3-12 (citing Obj., 8-22). To the extent that this reformulated claim may be argued in those objections, however, they are not the operative pleadings before this Court. In denying Rayford's claims the first time, this Court noted that his objections were broader than the allegations of his amended petition, and refused to consider any claim outside of the scope of the amended petition, pointing out that leave had not been granted to amend the pleadings in that way.[1] Mem. Op., 19 n.11 & 20 n.12. Therefore, this Court limited its consideration to the claims presented in the pleadings before the Magistrate Judge, and considered that any new claims made in the objections were effectively waived.[2]

In the amended petition before the Magistrate Judge, Rayford does not assert the precise reformulated claim now identified in the additional supplemental briefing, although it appears to involve parts of the first three claims asserted the amended petition. One of those claims–Rayford's third claim–discusses the failure of trial counsel to introduce records to prove mitigation, referring specifically to his Parkland hospital medical records. Am. Pet., 25-28. Rayford now argues that his

---

[1] In observing that "leave has not been granted to amend the pleadings to include any matters not exhausted in the state court," this Court did not also proceed to an analysis of the claims made to the state court to determine whether any of Rayford's new allegations might come within the state court pleadings. Mem. Op., 19 n.11 & 20 n.12. In light of the instructions from the Court of Appeals, however, the Court now makes that analysis.

[2] In *Robinson v. Wade,* 686 F.2d 298, 304 (5th Cir. 1982), the district court was also found not to have abused its discretion by refusing to consider new habeas corpus claims raised in objections. "It is of no significance that Robinson presented his new claims in the guise of 'Objections to the Recommendation of the Magistrate.' Attempts to raise new claims are governed by the rules of amendment, without regard to the characterization given the claims by the petitioner." *Id.,* 686 F.2d at 304 n.11; *see also Borden v. Secretary of Health & Human Services,* 836 F.2d 4, 6 (1st Cir. 1987) (issues raised for first time in objections to magistrate judge's recommendation considered waived); *Simmons v. United States,* No. 5:11-CV-57, 2014 WL 2329478 (N.D.W. Va. May 28, 2014) (listing survey of cases addressing same problem).

reformulated claim differs from the claim that was presented to the state court in that his state habeas counsel "only complained of trial counsel's failure as to the Parkland records for the specific purpose of showing *remorse*." Add. Supp. Br., 3 (emphasis added). Although a comparison with the state court records indicates that this would not be a meaningful distinction from the claim that was presented to the state court, it would appear to distinguish the claim presented in the amended petition before this Court.

In the third claim that Rayford presents in the amended petition before this Court, he claims that trial counsel's deficiency prejudiced him in that "the Parkland Hospital medical records were graphic and compelling evidence of Rayford's *remorse*,"[3] and that these records "constituted crucial mitigating evidence of *remorse*." Am. Pet., 25, 27 (emphasis added). This is the only mitigation purpose that Rayford specifically identifies for these records in the amended federal petition. In contrast, the application before the state court included other mitigating purposes for these records.

In describing the mitigating value of the Parkland Hospital medical records, the application filed in state court explained: "These records were evidence of Rayford's remorse *and acceptance of responsibility*." 1 SHR 72 (emphasis added); *see also* 1 SHR 86 (stating that these records would show "remorse and acceptance of responsibility"). "These medical records also document *provocation*" in that the earlier victim had obtained "a shotgun five years before and shot William Rayford during an argument." 1 SHR 76 (emphasis added). The state-court application also stated

_____

[3]Rayford's statement of the "Facts Relevant to Claim" portion of this claim in his amended petition, Am. Pet, 25-27, copies the exact language from that portion of the same claim presented to the state court that argued trial counsel was ineffective in failing to present this evidence. 1 SHR 86-88 (Section (B)(2) of Claim 5). Rayford did not incorporate, however, the other mitigating purposes of this evidence that were listed in the claim that was presented to the state court.

that "[t]hese records were relevant to demonstrate ... 'evidence of [Rayford's] **guilt, shame, depression,** remorse, **and self-perceived need to be punished**.'"   1 SHR 81-82 (emphasis added). These allegations were made in Rayford's fourth habeas-corpus claim in state court and incorporated by reference into his fifth claim in state court, in which he specifically alleged that trial counsel was ineffective for failing to lay a proper foundation for the admission of these records.   1 SHR 85. Therefore, Rayford's argument that state habeas counsel failed to argue a "broader" mitigation purpose to these records than remorse was incorrect.   Although these purposes were drawn from the same records presented to both the federal and state courts, it appears to have been federal habeas counsel–not state habeas counsel–that did not specify in the controlling pleadings such a broader mitigation purpose for these records.

Rayford also appears to have incorrectly asserted that state habeas counsel did not complain of trial counsel's failure to present "the other records"–apparently referring to prison and jail medical records–for a purpose other than "showing Rayford's 1986 plea was involuntary."   Add. Supp. Br., 3.   While the state habeas application did complain that these "other records" showed that the earlier plea was involuntary, it included an alternate assertion that is not made in the original or amended petition before this Court.   Before the state court Rayford also asserted that, once the 1986 conviction was admitted into evidence, trial counsel should have admitted these prison and jail medical records to give it a proper context before the jury.

> Additionally, when the 1986 conviction was admitted, trial counsel failed to provide the jury with a full and adequate explanation to answer the question: how could it have happened again?   The records reflect that Rayford was not a man who was antisocial personality (sic).   *See* Exhibit 10: TDCJ, Beto I, Psychological Evaluation, p. 2 ("A depressive or borderline personality disorder would be more appropriate for Mr Rayford.").   Rather, the record evidence demonstrates ample evidence that Rayford had a continuing history of mental illness and personality

disorder that pre-dated the 1986 killing of Gail Rayford, that continues to this present day.  Exhibit 8: Affidavit, Kessner, Gilda, Psy.D.

1 SHR 128-29.[4]  State habeas counsel cited articles on the neurobiology of abandonment homicide and included detailed allegations from Dr. Kessner's report, extensively referencing the prison medical records and contending that his deep-rooted psychological problems were not properly treated.  1 SHR 129-30.  The state petition emphasized the need to put this evidence before the jury once the prior conviction was admitted.

> Thus, the 1986 adjudication should not have been admitted at all, and when it was, trial counsel failed to provide the jury with a rationale (sic) explanation for how it could happen again in 1999, providing a full and adequate explanation of Rayford's history of mental impairment and personality disorders that had their origin in early development.  This information was necessary, crucial and valid mitigating evidence that was not presented to the jury for consideration when deciding between life and death.  It is no wonder that the jury returned a verdict of "no" to the second special issue concerning mitigation.

1 SHR 130-31.  The state application asserted the importance of admitting these records to explain the reason for two similar murders in light of the prosecutor's use of the 1986 murder conviction in closing arguments.  1 SHR 131-33.

Even though Rayford included this alternative theory in his claim presented to the state court, he does not appear to have actually presented this precise claim in the amended petition before this Court.  While he relies upon these records in connection with his second claim that trial counsel failed to *exclude* the 1986 conviction, Rayford only mentions the mitigating value of these

---

[4]The "records" and "record evidence" referenced in this part of the state habeas application included prison and jail medical records. 1 SHR 128-29.  These allegations referred to Rayford's "transfer to the Texas Department of Criminal Justice" where "he was evaluated for psychiatric needs" and was treated with medicine and therapy.  1 SHR 129.  It also referenced the "TDCJ, Beto I, Psychological Evaluation," the illegal drugs "listed in his TDCJ records" and how he dealt with his depression and remorse "[i]n prison and jail."  1 SHR 129-130.

records in his first claim before this Court that trial counsel did not conduct an adequate investigation. That first claim does not, however, complain that the **records** from that conviction were not admitted, but instead that trial counsel did not discover the information that was contained in those records that should have lead to mental health **expert testimony** of his "abandonment rage."

> If counsel had conducted a proper and thorough investigation, they would have discovered evidence about Mr. Rayford's background and the prior murder conviction that would have provided powerful mitigation for both the killing of Rayford's wife in 1986 and the 1999 offense for which he was being tried. Defense counsel should have discovered, through investigation, the close similarities between the 1986 killing and the 1999 killing. Other than the judgment and documentation that appears to reveal that the State of Texas placed defense counsel on notice of its intent to rely the 1986 conviction, the files of trial counsel reflect an absence of any investigation into the plea itself or the circumstances surrounding its entry. There is a total absence of any documentation that reveals an investigation into the underlying offense, the performance of Daniel Parker, or the entry of the plea.

Am. Pet., 16-17. The context of the complaint actually asserted in the petition before this Court regarding the prison and jail medical records is that trial counsel (1) failed to exclude the 1986 conviction and (2) failed to obtain a mental health expert early enough to investigate and explain both murders to the jury.

> Defense counsel could have developed the argument that the 1986 evidence in the Gail Rayford killing is consistent with the [psychological and medical] literature, as is the 1999 killing of Carol Hall. Without referring to the syndrome as 'abandonment rage', the prosecutor in the 1999 case argued that Rayford's attack on his wife Gail was "... so savage it almost split one hand in half." He went on to argue that the facts of the crime were indicative of "... the homicidal violence contained in this [Rayford's] mind." (RR 47:169).

> \* \* \*

> The facts of the 1986 crime, the medical record notation in the Dallas County jail records of Rayford's mental illness, and the Parkland medical records of Rayford's attempted suicide **would have put defense counsel on notice of the need to have Mr. Rayford examined by a mental health expert** early in the preparation of the defense case.

-11-

Am. Pet., 18-19 (emphasis added). In this first claim, Rayford contends that such an expert obtained early enough would have been able to provide the context necessary for the jury to understand both murders, "and assisted the jury in understanding Mr. Rayford as a person." Am. Pet., 23.

This Court previously rejected the claims presented in the amended petition, including his complaint that trial counsel was ineffective in failing to present a more complete view of his background and mental health, such as "abandonment rage." Mem. Op., 21-23; Rec., 32-34. In accordance with the remand instructions, the Court now fully considers the reformulated claim.

## III.

## REQUEST FOR STAY

In its remand order, the Court of Appeals stated that this Court may, in its discretion, stay these proceedings for exhaustion if Rayford requests it. In *Rhines v. Weber*, 544 U.S. 269, 277 (2005), the Supreme Court recognized that the discretion of district courts to stay a federal habeas petition is limited in accordance with the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

As set out above, Rayford appears to have adequately presented this claim to the state court and it is exhausted. Therefore, Rayford has presented no unexhausted claim upon which a stay is required. To the extent that this claim may not have been fully exhausted in the state court, however, this Court may deny relief on the merits. See 28 U.S.C. § 2254(b)(2) ( "An application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Court **DENIES** Rayford's request to stay these proceedings to exhaust state remedies.

## IV.

## STANDARD OF REVIEW

This Court must afford deference to the state court adjudication of Rayford's claim. Because the adjudication of the claim also requires deference to the performance of trial counsel, this Court's review is doubly deferential.

### A. AEDPA

Federal habeas review of this claim is governed by 28 U.S.C. § 2254, as amended by the AEDPA. A federal court may not grant relief on a claim that the state court adjudicated on the merits unless the federal court first determines that the state court unreasonably adjudicated the claim, as defined in § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson,*

116 F.3d 1115, 1121 (5th Cir. 1997).  This provision restricts this Court's power to grant relief to state prisoners by barring claims in federal court that were not first unreasonably denied by the state courts. *See Fry v. Pliler,* 551 U.S. 112, 119 (2007); *Williams v. Taylor,* 529 U.S. 362, 412 (2000).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Richter,* 131 S.Ct. at 784.  "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'"  *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Richter,* 131 S.Ct. at 786, and *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (per curiam)).

    "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter,* 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed,* 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).  The Supreme Court also confirmed that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits,'" and that the party contending otherwise has the burden to show that the state court's decision did not involve a determination of the merits of his claim.  *Id.*  Otherwise, section 2254(d) applies to the petition.

    Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Under this clause, a federal court may not grant relief

on the merits of a claim on federal habeas review unless the state court either unreasonably applies the correct legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply.  *See Williams v. Taylor,* 529 U.S. at 407.  The Supreme Court recently reaffirmed the high and difficult standard that must be met under this provision.

> "'[C]learly established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice.  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*White v. Woodall,* 134 S. Ct. 1697, 1702 (2014) (citations omitted).

Under § 2254(d), this Court's review is limited to the record before the state court. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  *Pinholster,* 131 S.Ct. at 1400.

## B. *Effective Assistance of Counsel*

In addition to the high deference under the AEDPA, "[j]udicial scrutiny of counsel's performance must be highly deferential" under *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To prove a Sixth Amendment claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that such deficient performance prejudiced the defense.  *See id.* at 687.  As recently reaffirmed by the Court of Appeals, this Court's review is even more deferential when these two deferential standards are combined.

This two-pronged approach requires the defendant to demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must meet both prongs; otherwise, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* \* \* \*

The first *Strickland* prong requires the defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Any such showing must overcome a "strong presumption" that the representation did fall "within the wide range of reasonable professional assistance." *Id.* at 689. In an ineffectiveness claim that relies on a failure to develop evidence, the deficient performance question depends on whether "the investigation supporting counsel's decision ... was itself reasonable." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Counsel is not required to "pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter,* 131 S.Ct. at 789–90. Moreover, counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 789.

Under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

Because this case arises under AEDPA, *Strickland* is not the only standard we must keep in mind. When a petitioner brings a *Strickland* claim under AEDPA, the "pivotal question" is not whether the petitioner was deprived of his right to counsel under the Sixth Amendment. *Harrington v. Richter,* —— U.S. ——, ——, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). Instead, "the question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* Both the *Strickland* standard and AEDPA standard are "highly deferential," and "when the two apply in tandem, review is doubly so." *Id.* at 788 (internal quotation marks omitted).

*Beatty v. Stephens,* ___ F.3d ____, 2014 WL 3605860, at \*6 (5th Cir. July 16, 2014); *see also*

*Pinholster,* 131 S. Ct. at 1392 ("Review here is thus 'doubly deferential'" ... requiring a 'highly

deferential' look at counsel's performance ... through § 2254(d)'s 'deferential lens.'").

**V.**

Focusing on the new claim that Rayford has identified on remand–that his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial–the Court finds that the state-court adjudication was reasonable and consistent with the record.

## A. State Court Action

As stated above, Rayford's fifth claim in state court complained that trial counsel was ineffective for failing to lay a proper foundation for the admission of the Parkland Hospital medical records. 1 SHR 85. This claim incorporated by reference the allegations of his fourth habeas-corpus claim in state court that set forth the mitigating value of these records.[5] 1 SHR 85. In denying these claims, the state court found that the pertinent information contained in the medical records was submitted to the jury through the testimony of Dr. Kessner, Officer Hitt, and Rayford's TDCJ records (Defense Exhibit 3). 11 SHR 3251-53, 3257-59. The state court also found that Rayford had not identified any pertinent information from the medical records that was not otherwise presented to the jury, that the records themselves did not add any significant information to what the jury heard, but presented the information "in a form that is comparatively incomprehensible to the average non-medical professional," and that the jury actually received the information "in a more understandable format" that "did not lack any information regarding [Rayford's] suicide attempt." 11 SHR 3258. The state court also found that any "remorse" indicated by these records was for a

---

[5]The state habeas court found that the fourth claim–that the trial court violated his right to individualized sentencing by excluding medical records that would have provided evidence of Rayford's remorse and acceptance of responsibility–was procedurally barred because it was not raised in the direct appeal. 2 SHR 3254-55. Although it analyzed that claim together with the fifth claim claim–that trial counsel was ineffective for failing to establish the proper predicate to get those records admitted–the state court denied the ineffective-assistance claim on the merits. 2 SHR 3259-62.

prior murder, not the murder on trial, and did not prevent him from killing again. 11 SHR 3258-59. The state court concluded that Rayford failed to prove that trial counsel was ineffective for failing to have these records admitted and failed to show that the absence of these records undermined confidence in the outcome of the trial. 11 SHR 3261-62.

In denying Rayford's ninth claim regarding trial counsel's failure to prevent the admission of the 1986 conviction, the state court found it to be procedurally barred because Rayford failed to object at trial,[6] and barred by laches due to Rayford's unexplained lack of diligence in waiting 17 years to challenge his guilty plea and the effectiveness of his prior trial counsel. 11 SHR 3270-71. In a detailed analysis, the state court alternatively found that Rayford had not rebutted the presumptions of Rayford's competency, the presumptions of regularity in the prior court findings and proceedings, the opinions of the court-appointed psychiatric expert, and the presumptions in favor of his prior trial counsel's performance, but that the available evidence supported the voluntariness of his prior guilty plea, the effectiveness of his prior trial counsel, and the admissibility of that conviction in his trial. 11 SHR 3271-98. The state court expressly rejected a portion of the alternative theory presented by state habeas counsel—that trial counsel was ineffective for not providing an explanation for both murders after evidence of the 1986 murder was admitted—in holding that, to the extent Rayford implied that counsel were also ineffective for failing to present

_____

[6]It is not clear whether the state court also found to be procedurally barred the alternative theory that trial counsel was ineffective for not admitting the medical records and not providing an explanation for both murders after evidence of the 1986 murder was admitted, because this would not be affected by any failure to object. 1 SHR 129-33. Even so, this state court finding may have been intended to apply to the eighth claim since the basis for the ninth claim was that trial counsel failed to object to the admission of these records. 11 SHR 3266-67. The listed reason for finding the procedural bar would neither present a logical procedural obstacle, nor form an independent and adequate state ground to bar such an ineffective-assistance claim. It is not necessary to resolve that issue, however, because Respondent does not assert a procedural bar and Rayford has not even acknowledged that this part of the claim was presented to the state court.

additional mental health issues developed in Dr. Kessner's post-trial affidavit, including "abandonment rage," Rayford and his family "refused to allow counsel to develop this line of mitigating evidence because both he and his siblings did not want to bring their mother into the courtroom to malign her past sexual conduct," thereby preventing trial counsel from presenting that mitigation theory to the jury.  11 SHR 3296.  The state court concluded that trial counsel's conduct was reasonable trial strategy and that they were not ineffective.  11 SHR 3298.

## B. *Magistrate Judge Action*

The Magistrate Judge rejected the arguments presented in Rayford's amended petition, and agreed with the state court that the substance of the medical records was placed before the jury, the medical records would have added little to the jury's understanding of Rayford's mental state following the 1986 murder, and that the records had limited value because the "remorse" was not for the instant murder.[7]  Rec., 27-28 (citing Am. Pet. 25; 46 RR 182-83; 47 RR 98, 101-03; 2 SHR 286-404), Rec., 28.  The Magistrate Judge also agreed with the state court that defense counsel did, in fact, investigate a potential "abandonment rage" theory, but that Rayford and his family prevented counsel from developing it in the evidence before the jury.  Rec., 32-33 (citing Am. Pet., 15-20; 44 RR 38-40, 53, 62-63, 68-73; 46 RR 182-83; 47 RR 101-03,115, 119; 10 SHR 3066; 11 SHR 3296).  The Magistrate Judge also found that Rayford had not shown that he suffers from a mental illness other than depression, which was included in the expert testimony at trial.  Rec., 34 (citing 46 RR 123, 125, 142).

---

[7]The Magistrate Judge observed, "[i]t strains credulity to suggest that the jury would have viewed petitioner in a more favorable light because he showed remorse for a murder committed more than 14 years earlier."  Rec., 28.

## C.   Rayford's Objections

In his objections, Rayford not only argued the theory set forth in his amended petition, that these records showed "remorse" for the 1986 murder that should have prompted trial counsel to obtain an expert, Am. Pet., 19, 22, but also added the theory that the medical records themselves suggested that Rayford suffered from "guilt, shame, depression, remorse and self-perceived need to be punished," and included the 1999 murder.  Obj., 17-18.  Even in these additional allegations, however, the primary mitigating value argued for these records was in the expert interpretation given to these records by Dr. Kessner that Rayford used to support his argument for a more complete mitigation investigation resulting in this kind of expert testimony being presented to his jury.

## D.   Previous Adjudication

In accepting the Recommendation, this Court noted that the expert presenting this theory in postconviction habeas review was the same expert that testified for Rayford at trial and, having reviewed essentially the same information,[8] had testified extensively about Rayford's background,

---

[8]This Court's prior opinion discussed the evidence reviewed by Dr. Kessner before her trial testimony and in connection with her post-conviction habeas assistance.  Mem. Op., 22-23.  In connection with her habeas assistance, she reviewed (1) documents included in exhibits that were offered at the trial, (2) records that show they were subpoenaed for trial and/or compiled with a business records affidavit before trial, (3) news articles about the trial, (4) letters from Dr. E. Clay Griffith, M.D., to the state trial judge that Rayford was competent for trial in 1986, (5) psychiatric articles that may not have been available at the time of trial, and (6) her trial testimony and the documents and interviews conducted in preparation for such testimony, that included her opinion on the mitigation special issue.  2 SHR 272-73.  In her trial testimony, she specifically discussed the 1986 murder and reviewed "records from the Criminal District Court No. 4 of Dallas County, Texas, Cause No. F86-87664-SK" in preparation for her trial testimony, 46 RR 77, 111; 47 RR 35 (see generally 46 RR 110-12, 143; 47 RR 35-38, 41).  Whether she actually reviewed the competency evaluation letters from Dr. Griffith in that file before she testified at trial is not entirely clear.  Even so, her post-conviction report does not rely on those evaluations but, instead, disagrees with them.  And while it is not clear whether, prior to trial, she reviewed the 2000 psychiatric article mentioned in her postconviction report, she testified at trial that her review of scholarly articles was current.  46 RR 76-77.  She also testified at trial that her interviews were sufficient in length and quality for her to form the necessary conclusions and opinions.  46 RR 76, 134-35.  She also testified that she was able to form an opinion from the records and

-20-

including abandonment, abuse, and the circumstances of both murders.  Mem. Op., 22-23.  The Court found that Dr. Kessner testified at trial "about the long-term psychological, emotional, physical and cognitive effects of this history of abuse and neglect," that she testified that her investigation was sufficient for her to make the conclusions and opinions about which she testified, and that she was not confined in her testimony to only those records that had been admitted into evidence or constrained by the state court from testifying about any available "abandonment rage" theory.  Mem. Op., 22-23.  The Court found that the state court's conclusions that Rayford was not deprived of the effective assistance of counsel in the investigation and presentation of mitigating evidence at the punishment stage of his trial were consistent with the record and entitled to deference.

### E. Analysis

As set out above, Rayford's claim was presented to the state court.  1 SHR 85-88, 126-33. No procedural bar is asserted by Respondent to the consideration of the merits of any part of this claim, and this Court declines to do so sua sponte.[9]  Therefore, the claim is not procedurally barred, and the state-court adjudication is entitled to AEDPA deference even if the state court's opinion does not detail all of the reasons for denying all parts of the claim.  *See Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011).  Because no procedural obstacle prevents this Court from reaching the merits

---

other information that she had.  46 RR 76-78, 120.  Therefore, it does not appear that any of the information that she had not reviewed prior to trial should have made a material difference to her trial testimony.

[9]Respondent's supplemental briefing affirms that he "never asserted that any of Rayford's claims were procedurally defaulted," and notes that this Court's prior adjudication did not raise any sua sponte.  R's Supp. Br., 5.

of this claim, there is no need to consider whether this claim would come within an exception to procedural bar, such as the one created in *Martinez v. Ryan*.[10]

Since this claim was presented to the state court, and presumed to have been denied on the merits, a full reconsideration of it requires AEDPA deference to the state-court adjudication. *Richter*, 131 S.Ct. at 184-85. As found by the state court, the Magistrate Judge, and previously by this Court, the substance of the Parkland Hospital medical records were presented to the jury through the testimony of Dr. Kessner. Officer Hitt, and applicant's TDCJ records (Defense Exhibit 3). 11 SHR 3252-53, 3257, 3259; Rec., 27; Mem. Op., 19. In addition, pertinent portions of the prison and jail medical records were also presented through the testimony of Dr. Kessner at trial. 46 RR 123 (listing mitigating factors), 142 (educational degrees obtained in prison), 174-75 (no violations in county jail, positive adjustments in prison, mental-health problems and treatments in prison and on parole); 47 RR 21-27 (discussing notations by prison psychologist, discrepancies in Rayford's self-reporting, mental health diagnosis and treatments in prison and on parole), 37-38 (lack of county jail disciplinary violations), 40-42 (explaining self-reporting discrepancies in prison psychological records).

---

[10]Since state habeas counsel actually did present the claim to the state court in a way that federal habeas counsel did not, she could not have been ineffective for failing to do so under *Martinez*. 132 S. Ct. at 1318 (applying the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) to the conduct of state habeas counsel). Therefore, that prong of the *Martinez* exception cannot be satisfied even if the procedural bar mentioned by the state court in its adjudication of the ninth claim included the alternate theory and was asserted in these proceedings. Further, because the claim has no merit, it would not be substantial under the second prong of *Martinez*. 132 S. Ct. at 1318 (requiring a showing "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit").

Although Dr. Kessner asserts in her postconviction affidavit that she would have testified in a certain way if certain records had been admitted,[11] no such limitation on her testimony was indicated by the trial record and state law would have allowed her to provide an expert opinion, even from information contained in documents that were not themselves admissible, so long as the information was of a type reasonably relied upon by similar experts in forming such opinions. *See* Tex. R. Evid. 703; *Ramirez v. State,* 815 S.W.2d 636, 651 (Tex. Crim. App. 1991) ("an expert's opinion could be predicated solely on inadmissible hearsay if of a type reasonably relied upon by experts in that field of expertise"). In fact, Dr. Kessner **did testify** regarding the contents of many of these records that were not admitted.[12] 46 RR 143-44 (explaining how the records support her conclusion that he would not be a future danger), 174-75 (county jail, prison and parole records concerning conduct and mental health), 182-83 (discussing contents of Parkland hospital medical records showing injuries following 1986 murder); 47 RR 21-27 (mental health records in prison and on parole), 37-44 (county jail, prison and parole records concerning conduct and mental health).

---

[11]In her postconviction affidavit, Dr. Kessner stated:

> I have concluded based on the records review, that had I been allowed to testify in the 2000 Case about the content of Defendant's Trial Exhibit 4 (not admitted), Diagnosis and Summary Record, dated 06-19-86, Medical Records of Dallas County Hospital District (Parkland Hospital), that I would have testified that the documentation showed that Mr. Rayford was remorseful for the 1986 killing of Gail Rayford, and that his severe, self-inflicted injuries were evidence of his guilt, shame, depression, remorse, and self-perceived need to be punished.

2 SHR 273.

[12]Just before the Parkland Hospital medical records were offered as Defendant's Exhibit No. 4, Dr. Kessner testified without objection regarding some contents of those records, and specifically described the injuries that Rayford sustained at the time of the 1986 murder. 46 RR 182. The prosecutor only objected to the admission of those records, and not to the doctor's testimony regarding the contents of those records. 46 RR 183.

And despite her postconviction assertions, she also testified at trial to the mitigating factors that "particularly apply to Mr. Rayford" including "low self-esteem, depression, anger, exaggerated fears, suicidal feelings, overly compliant, withdrawal, poor peer relations, some problems in peer relation, anxiety disorders, sleep disturbance, lack of trust, and drug and alcohol problems. ... over the course of his childhood and adolescence and adult life." 46 RR 123 (analogizing Rayford's tragic childhood, adolescence and adult life to a house built on a damaged foundation). Therefore, the fact that the specific records were not admitted does not support the assertion that her testimony would have been materially different if they had been admitted. The different way that she now believes would be a better presentation of the mitigation case appears more likely to be the result of hindsight.

In her postconviction affidavit, Dr. Kessner also does not confine herself to standards and literature that would have existed at the time of trial in criticizing the adequacy of trial counsel's mitigation investigation and presentation. In fact, she seems to say that such mitigation investigations should never be considered complete or adequate because the "professional literature and research base for this type of investigation is *continually growing*." 2 SHR 272 (emphasis added). This would not only conflict with *Strickland*, but would be an impossible standard to apply. *See Strickland*, 466 U.S. at 690 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct . . . as of the time of counsel's conduct.").

In sum, Rayford does not show that the trial court's denial of her claims regarding the failure of trial counsel to have these medical records admitted into evidence was incorrect, much less contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Therefore, Rayford's claim is denied.

IV.

CONCLUSION

Rayford's request to stay these proceedings in order to present this claim to the state court is **DENIED**.  Rayford's petition for a writ of habeas corpus relief is **DENIED**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court again **ADOPTS and INCORPORATES by reference** the Magistrate Judge's Findings, Conclusions and Recommendation (Rec.) filed in this case in support of its finding that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the event he files a notice of appeal, Rayford may proceed *in forma pauperis* on appeal.

**SO ORDERED.**

**SIGNED: September 22, 2014**.



_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE