UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM EARL RAYFORD, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| V. | § | Civil Action No. 3:06-CV-978-B |
| | § | |
| LORIE DAVIS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| *Respondent.* | § | |

MEMORANDUM OPINION AND ORDER
TRANSFERRING SUCCESSIVE HABEAS PETITION

On January 26, 2018, Petitioner William Earl Rayford, a Texas death-row inmate set for execution on January 30, filed a document purporting to be a motion to alter or amend judgment under Rule 60(b) of the Federal Rules of Civil Procedure ("Motion"), doc. 109. On that same day, Rayford filed his related request to stay his execution ("Stay Application"), doc. 110. On January 29, Respondent filed a response in opposition ("Response"), doc. 112. Because Rayford's motion for relief under Rule 60(b) seeks to advance one or more claims, it is considered a successive petition that this Court lacks jurisdiction to consider. This case is therefore **TRANSFERRED** to the United States Court of Appeals for the Fifth Circuit along with the application to stay his execution.

I.

BACKGROUND

Rayford was convicted of capital murder and sentenced to death for the murder of his former girlfriend, during which Rayford also beat and stabbed her 11-year-old son. *See* Mem. Order, Doc. 57, at 1. His conviction and sentence were affirmed on direct appeal. *See Rayford v. State*, 125

S.W.3d 521 (Tex. Crim. App. 2003). Rayford filed an application for a post-conviction writ of habeas corpus in state court that was denied by the Texas Court of Criminal Appeals ("CCA"). *See Ex parte Rayford,* No. WR-63201-01, 2006 WL 1413533 (Tex. Crim. App. May 24, 2006). Rayford then filed a petition for writ of habeas corpus in this Court, doc. 14, and an amended petition, doc. 20. The Magistrate Judge recommended that relief on all claims be denied. *See* Recommendation, Doc. 50. Rayford filed objections, doc. 55. This Court overruled the objections, accepted the recommendation and denied relief. *See* Order, Doc. 57.

The Court of Appeals remanded the case for a full reconsideration of his claim of ineffective assistance of counsel in light of *Martinez v. Ryan,* 566 U.S. 1 (2012), and *Trevino v. Thaler,* 569 U.S. 413 (2013). *See Rayford v. Stephens,* 552 F. App'x 367, 368 (5th Cir. 2014). Following additional briefing on remand, this Court again denied relief. *See* Order, doc. 80. The Court of Appeals denied a COA, *see Rayford v. Stephens,* 622 F. App'x 315 (5th Cir.), *cert. denied,* 136 S. Ct. 585 (Dec. 7, 2015).

The state court then set Rayford's execution for January 30, 2018. *See State v. Rayford,* No. F00-01529-H (Crim. Dist. Ct., Dallas Co., Tex., June 6, 2017). On August 9, 2017, Rayford filed a motion for funding the expert assistance of Dr. Richard L. Fulbright to perform a neuropsychological evaluation for clemency purposes. *See* Mot. Funding, Doc. 100. After considering a response in opposition, this Court granted funding on September 5 in the amount of $7,500. *See* Order, Doc. 102. On November 8, Rayford filed a motion to appoint the Federal Public Defender for the Northern District of Texas as co-counsel, which was granted on November 20 after a response and reply were filed. *See* Order, Doc.107.

On January 19, 2018, Rayford filed a subsequent state habeas application ("SSHA") seeking

habeas relief in the state court. *See Ex parte Rayford,* No. WR-63,201-02 (Tex. Crim. App.). In a split decision, the CCA found that Rayford failed to satisfy the requirements of Tex. Code. Crim. App., article 11.071 § 5, denied a stay of execution and dismissed the application "as an abuse of the writ without reviewing the merits of the claims." *Ex parte Rayford,* No. WR-63,201-02 (Tex. Crim. App. Jan. 26, 2018). Rayford now seeks to alter or amend this Court's judgment denying relief under Rule 60(b) of the Federal Rules of Civil Procedure and to stay his execution.

## II.

## MOTION AND RESPONSE

Rayford's motion seeks to reopen the habeas corpus proceedings "pursuant to Federal Rule of Civil Procedure 60(b)(6), because the deprivation of services guaranteed by 18 U.S.C. § 3599 caused a defect in the integrity of his federal habeas corpus proceedings." Motion, 1. Specifically, Rayford argues that he was deprived of the statutory right to counsel guaranteed under 18 U.S.C. § 3599(f) to meaningfully research and present his habeas claims when the Court denied his motion for funds to hire a mitigation specialist. These claims included "that trial counsel (1) failed to 'effectively challenge or controvert the testimony of the state's medical examiner,' and (2) 'did not conduct a reasonable investigation of mitigating evidence.'" Motion, 12 (quoting Am. Pet, Doc. 20). Although Rayford argues that these claims were unexhausted and subject to a procedural bar, he acknowledges that this Court denied relief on these claims not on a procedural ground but for lack of merit because Rayford failed to allege facts and evidence that would have entitled him to relief–facts that he argues he could have obtained if the Court had granted his motion for funds.[1]

---

[1] Rayford argues that he was "denied relief ***on the merits*** of those claims because he could not substantiate them—even though the sole reason he could not substantiate [them] was the denial of funding."

*See* Motion, 7-8, 12-14.

Respondent argues in response that Rayford's Motion constitutes a second or successive habeas petition that this Court does not have jurisdiction to consider because it has not been authorized by the United States Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 2244(b)(3). *See* Response, 2, 8-25. Respondent argues that the motion presents claims in that it "directly and substantively attacks this Court's decision regarding the merits of Rayford's constitutional claims." Response, 2, 9. Respondent argues that the motion fails to allege "a cognizable defect in this Court's earlier proceedings." Response, 10. "Rayford identifies no precedent suggesting that a district court's denial of funding may constitute a defect in the proceedings warranting relief from judgment." Response, 13. Instead, the motion attempts to raise claims "under the guise of defects of the original habeas proceedings," because it attempts "to reopen the proceedings for the purpose of raising habeas claims." Response, 10, 11.

In the alternative, Respondent argues that Rule 60(b) relief is not available to Rayford because the grounds presented do not constitute the extraordinary circumstances required for Rule 60(b) relief. *See* Response, 20-25. Respondent also asserts that the motion is untimely. *See* Response, 25-28. Respondent also argues that Rayford's claims are procedurally barred and meritless. *See* Response, 28-35. Finally, Respondent argues that a stay of execution is not warranted. *See* Response, 35-36.

---

Motion, 13 (emphasis added).

# III.

## AUTHORIZATION REQUIRED FOR SUCCESSIVE PETITIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits the circumstances under which a state prisoner may file a successive application for federal habeas relief. *See* Pub. L. 104-132, 110 Stat. 1214 (1996). A petition is successive when it raises a claim that was or could have been raised in an earlier petition. *See Hardemon v. Quarterman,* 516 F.3d 272, 275 (5th Cir. 2008). A claim presented in a second or successive application under Section 2254 must be dismissed unless:

> (A)     the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)
>> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>>
>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). That determination must be made by a three-judge panel of the Court of Appeals before Rayford may file his application in federal district court. *Id.* § 2244(b)(3). Therefore, if Rayford's motion requesting relief under Rule 60(b) constitutes a successive habeas petition requiring him to first obtain authorization from the Court of Appeals, then this Court does not have jurisdiction to consider Rayford's motion.

## IV.

## JURISDICTION

Labeling a document as a Rule 60(b) motion does not mean that it is not, in actuality, a successive habeas petition requiring Circuit authorization. Indeed, as Rayford acknowledges, a previous habeas challenge to his conviction has been denied by this Court. *See Rayford v. Stephens,* No. 3:06-CV-0978-B, 2014 WL 4744632 (N.D. Tex. Sept. 22, 2014), *COA denied,* 622 F. App'x 315 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 585 (2015). The threshold jurisdictional question is whether Rayford's motion advances one or more claims that were, or could have been, made in the earlier petition. If it does, then the motion constitutes a successive petition under 28 U.S.C. § 2244(b) rather than a motion properly made under Rule 60(b).

## A.

## STANDARD

In *Gonzalez v. Crosby,* 545 U.S. 524 (2005), the Supreme Court provided guidance on whether a motion filed under Rule 60(b) should be construed as a successive petition under § 2244.

> In some instances, a Rule 60(b) motion will contain one or more "claims." For example, it might straightforwardly assert that owing to "excusable neglect," Fed. Rule Civ. Proc. 60(b)(1), the **movant's habeas petition had omitted a claim of constitutional error, and seek leave to present that claim**. *Cf. Harris v. United States,* 367 F.3d 74, 80-81 (C.A.2 2004) (petitioner's Rule 60(b) motion sought relief from judgment because habeas counsel had failed to raise a Sixth Amendment claim). Similarly, **a motion might seek leave to present "newly discovered evidence,"** Fed. Rule Civ. Proc. 60(b)(2), in support of a claim previously denied. *E.g., Rodwell v. Pepe,* 324 F.3d 66, 69 (C.A.1 2003). Or a motion might contend that a subsequent change in substantive law is a "reason justifying relief," Fed. Rule Civ. Proc. 60(b)(6), from the previous denial of a claim. *E.g., Dunlap v. Litscher,* 301 F.3d 873, 876 (C.A.7 2002). Virtually every Court of Appeals to consider the question has held that such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly. *E.g., Rodwell, supra,* at 71-72; *Dunlap, supra,* at 876.

We think those holdings are correct. A habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a "habeas corpus application," at least similar enough that failing to subject it to the same requirements would be "inconsistent with" the statute.

*Id.* at 530-31 (emphasis added).

Under this standard, a motion filed under Rule 60(b) "is a subsequent habeas corpus application whenever the Rule 60 motion presents a 'claim' for habeas relief." *Ruiz v. Quarterman,* 504 F.3d 523, 526 (5th Cir. 2007). In *Ruiz,* the Court of Appeals explained that under the Supreme Court's standard,

a Rule 60(b) motion is a habeas claim when it presents a new claim for relief, or when it presents new evidence in support of a claim already litigated, or when it asserts a change in the substantive law governing the claim, or when it attacks the federal court's previous resolution of a claim on the merits.

*Id.* (citing *Gonzalez,* 545 U.S. at 531) (footnote omitted). The Supreme Court also noted that "an attack based on the movant's own conduct, or his habeas counsel's omissions ... ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Gonzalez,* 545 U.S. at 532 n.5 (internal citation omitted).

**B.**

**ANALYSIS**

Rayford's motion seeks to present new evidence to show that this Court's prior resolution of the merits of his claims were incorrect. In fact, at least one of Rayford's new allegations varies so much from his prior allegations before this Court as to constitute a new claim for relief.

### 1. *Failure to Effectively Challenge State's Medical Examiner*

Although Rayford's amended federal habeas petition argued that he was denied the effective assistance of counsel when his trial attorneys failed to effectively challenge or controvert the

testimony of the State's medical examiner, it fatally did not identify any expert witness or present expert testimony contradicting the State's expert. *See* Am. Pet., 28-29; Rec., 28. Rayford's motion attempts to cure that deficiency by presenting new evidence. *See* Motion, 16, 22-23; Mot. Ex. B.

In his amended petition, Rayford alleged that trial counsel, knowing the exact location of Ms. Hall's death would be a critical issue, "should have obtained the services of a forensic medical examiner to controvert the state's position that Hall died sometime after witness Duane Johnson saw Mr. Rayford drag Hall in back of the house." Am. Pet., 28. Rayford argued that because of conflicting testimony from witnesses Johnson and Ben Thomas as to "what happened that morning outside Hall's house, there is a reasonable likelihood that had trial counsel engaged the services of a forensic medical examiner, they could have established that Hall was deceased before her body was ever moved around to the side of the house." *Id.* Rayford did not, however, request funding for the assistance of a pathologist and did not identify any expert that could have given the proposed opinion at trial. Therefore, this Court denied relief for lack of merit. Rec., Doc. 50, 28; Order Accepting, Doc. 57, 21.

In his current motion, Rayford identifies and provides an affidavit from a new pathologist, Dr. Jack Daniel, who disagrees with the opinion of the State's expert, medical examiner Dr. Jennie Duval, that Ms. Hall died in the culvert. Therefore, Rayford relies upon new evidence to support relief on these claims. "Until very recently, Mr. Rayford did not have the opportunity to meaningfully research and develop his federal habeas claims." Motion, 12. "The evidence rebutting the medical examiner's testimony that Mr. Rayford recently uncovered goes to the core of his capital murder conviction." Motion, 16. "New evidence seriously calls into question the accuracy of her testimony." Motion, 22. "This is significant evidence that no jury ever heard and no court ever considered."

Motion, 17.

Although he contends that this Court denied him the funds needed to make this claim,

Rayford did not request funding from this Court for an expert pathologist to assist with this claim.

> When Mr. Rayford presented his claim of ineffective assistance of trial counsel to this
> Court before, lack of funding prevented him from presenting evidence to the Court
> that would have substantiated his claims. With the funding he has since obtained,
> Mr. Rayford has developed the necessary evidence and now seeks to litigate his
> ineffective assistance of counsel claim before this Court.

Motion, 17.[2] Contrary to this assertion, Rayford made no request for funding expert or investigative

assistance before he filed his petition in May of 2007, and his amended petition in September of

2007. And his motion for funding filed in May of 2009 did not request funds for the assistance of

an expert pathologist to contest the findings of the state medical examiner, but only for a mitigation

specialist to conduct a new mitigation investigation. *See* Mot. Funds, Doc. 40. Even if his motion

requested such expert funding, the denial of funding could not constitute a defect in these

proceedings under Rule 60(b)(6). As Respondent points out, the denial of funding cannot be a

defect under *Martinez* because "*Martinez* did not create a right to funding." Response, 19 (citing

*Crutsinger v. Stephens*, 576 F. App'x 422, 431 (5th Cir. 2014)).

Rayford's motion attempts to reopen this case to present new evidence that his federal habeas

counsel did not previously request or obtain–the opinion of an expert to counter the State's expert.

But even armed with a new expert opinion that would disagree with the State's expert, Rayford has

---

[2] Rayford's assertion that he "now seeks to litigate" his claim, appears to conflict with his later
assertion that "[t]o be clear, Mr. Rayford is not attempting in this pleading to relitigate his ineffective
assistance claim, but instead merely offers the following information as an exceptional circumstance that
justifies reopening his case." Motion, 22. Contrary to that isolated statement, however, it is clear that
Rayford seeks to reopen his case to present new evidence to litigate these claims, "to allow a fair, meaningful
opportunity to present evidence and obtain a meaningful merits review of his substantial claim of trial
counsel's ineffectiveness." Motion, 27.

not shown that he would be entitled to habeas relief. Rayford's trial counsel obtained the assistance of an expert pathologist at trial but decided to not call him. *See* 45 RR 29-30; 41 RR 5-6. Rayford's new evidence does not show deficient performance under *Strickland v. Washington,* 466 U.S. 668 (1984), because it merely shows a disagreement between experts that is insufficient to support relief on an ineffective assistance of counsel claim. "It will nearly always be possible in cases involving the basic human emotions to find one expert witness who disagrees with another and to procure an affidavit to that effect from the second prospective witness." *Waye v. Murray,* 884 F.2d 765, 766-67 (4th Cir.), *cert. denied,* 492 U.S. 936 (1989), quoted with approval in *Woodward v. Epps,* 380 F. Supp. 2d 788, 791 (S.D. Miss. 2005) and *Robertson v. Davis,* No. 3:13-CV-0728-G, 2017 WL 1178243, at *12 (N.D. Tex. Mar. 30, 2017), *COA denied,* No. 17-70013, 2017 WL 6547386 (5th Cir. Dec. 21, 2017). Such a disagreement between experts does not establish ineffective assistance of counsel. *See Bell v. Thompson,* 545 U.S. 794, 809-10 (2005) (approving decision of Tennessee Court of Criminal Appeals that trial counsel could not be faulted for relying upon the opinions of his two medical experts). Therefore, even with the opinion of this expert, Rayford has not shown counsel ineffective.

Further, Respondent argues that Rayford's decision to not appeal this Court's denial of funding effectively abandoned this claim. *See* Response, 14, 19. It is unnecessary to determine whether Rayford abandoned this claim, however, because his motion clearly seeks to reopen this case to present new evidence to attack this Court's denial on the merits of his claim.

### 2. Brain Damage from Lead Poisoning

Although Rayford asserted in his original federal habeas petition that trial counsel did not conduct a reasonable investigation of mitigating evidence, *see* Am. Pet., 12-24, that earlier allegation did not assert that trial counsel failed to investigate and present evidence that Rayford has brain

damage from lead poisoning.  *See* Mot., 16-17, 23-25; Mot. Ex. A.

In his federal habeas petition, Rayford alleged that trial counsel did not conduct a reasonable investigation of mitigating evidence, particularly including documents in the case file of his prior conviction for the murder of his wife that raised possible challenges to his competency and sanity at the time, and that the similarities between the two murders could have formed the basis for arguing that "abandonment rage" deprived him of the mens rea to commit the murders.  S*ee* Am. Pet., 15-18.  Rayford argued that this information also would have put trial counsel on notice of the need to have Rayford examined by a mental health expert before Dr. Gilda Kessner.  *See* Am. Pet., 19-20.  This Court found that Rayford had not shown any deficiency in the mitigation investigation that would authorize relief.  *See* Rec., 28-34; Order, 21-23.

The record before this Court and the state court indicated that defense counsel presented a well-developed mitigation case at the punishment stage of the trial through the testimony of family members and Dr. Kessner.  *See* Rec., 29-31; Order, 22-23.  The Court also found that the documents in the 1986 murder case did not suggest Rayford was mentally incompetent, but the contrary.  *See* Rec., 32.  And the record also indicated that defense counsel investigated the "abandonment rage" theory, but that the state court properly found that Rayford prevented counsel from presenting that theory to the jury.  Rec., 32-33.   The state court found, and this Court agreed, that "Rayford and his siblings prevented his trial counsel from more fully developing and presenting evidence of these additional mental health issues in an effort to protect their mother from embarrassment." Order, 21-22 (citing vol. 11, State Habeas Record, 2195-3296). This Court found that the state court's findings were "consistent with the record and entitled to deference." Order, 23. This Court concluded that Rayford did not present any evidence of a serious mental disease or defect that trial counsel failed

11

to present to the jury. Rec., 34; Order, 22.

Upon remand, the Court fully reconsidered this claim, giving Rayford the benefit of the most expansive reading of his claim that "his trial counsel provided ineffective assistance by failing to properly introduce his Parkland hospital, prison and jail medical records as mitigating evidence in the punishment phase of his trial." *Rayford v. Stephens,* 622 Fed.Appx. at 327. Even under this reading, Rayford's complaint did not mention brain damage caused by lead poisoning, and Rayford has not pointed this Court to any allegation in any of his pleadings before the Court at that time that would have identified that mitigation theory.

In his current motion, Rayford provides new evidence in the form of an affidavit from Andres M. Lugo, M.D., M.P.H., M.S., F.A.C.M.T., a medical toxicologist, opining that Rayford suffers from lead poisoning that has resulted in brain damage. *See* Motion, 23-25; Mot. Ex. A. Rayford argues that this evidence shows he has been poisoned by long term exposure to toxins in his environment and retained bullets "adversely affecting the areas of his brain responsible for executive functioning, decision-making processes, impulsivity, and control and regulation of his behavior." Motion, 25.

Although he complains that this Court previously denied the necessary funding on this claim, Rayford did not request any funding for expert or investigative assistance until May 29, 2009, more than 2 years after filing his original petition in this Court and the expiration of the one-year limitations period set out in 28 U.S.C. § 2244(d). Further, Rayford's motion for funding did not request the assistance of a toxicologist or mental health expert that could have provided the evidence now presented in his motion. *See* Mot. Funds, 2-3. Instead, Rayford requested the assistance of a mitigation specialist, arguing that a new mitigation investigation was needed because the one conducted at trial by Dr. Gilda Kessner was begun too late and trial counsel's affidavit in the state

habeas proceedings that Rayford and his family "hindered him and left him unable to develop a complete mitigation theory" was entitled to no deference. *See* Mot. Funds, 1-2. Rayford did not appeal this Court's denial of funding.

Rayford seeks to reopen this case to present new evidence in support of a claim that is so different from what was pleaded that it constitutes an entirely new claim based on the mitigation theory that he suffers from brain damage caused by lead poisoning in his environment and retained bullets in his body. The asserted defect in the integrity of these proceedings, that this Court denied funding for a mitigation specialist 2 years after limitations ran, could not have impacted Rayford's ability to present this claim in his earlier-filed petitions.

### 3. *Conclusion*

Rayford's motion presents a new claim for relief, presents new evidence in support of a claim already litigated, and attacks this Court's previous resolution of claims on the merits. Rayford asserts as a defect in the proceedings the denial of funding that came too late to impact his federal habeas petition, that did not address the type of expert assistance now being presented, and that he did not appeal. Rayford's motion appears intended to rectify his prior federal habeas counsel's failure to assert a claim that trial counsel failed to investigate and present evidence of his brain damage from lead poisoning, and failure to support the claim that trial counsel failed to obtain the assistance of an expert pathologist, because prior counsel did not request or obtain expert assistance in the preparation and filing of the original and amended petition in this Court.

Rayford's motion, therefore, constitutes a successive habeas petition that requires Circuit authorization before this Court has jurisdiction under 28 U.S.C. § 2244(b). Because this Court lacks jurisdiction to consider the motion, it must dismiss or transfer the motion to the Court of Appeals.

## C.

## DISPOSITION

Rayford's motion to reopen the prior proceedings to assert claims and present new evidence attacking the merits adjudication by this Court constitutes a successive habeas petition that requires authorization under 28 U.S.C. § 2244(b)(3). Because the Court of Appeals has not issued an order authorizing this Court to consider this successive Section 2254 petition, this Court is without jurisdiction to do so. This Court may either dismiss the motion for lack of jurisdiction, or it may transfer it to the Court of Appeals. *See In re Hartzog,* 444 F. App'x 63, 654 (5th Cir. 2011) (citing *United States v. Key,* 205 F.3d 773, 774 (5th Cir. 2000)).

"Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time consuming and justice-defeating." *Miller v. Hambrick,* 905 F.2d 259, 262 (9th Cir. 1990). These concerns are heightened when considering whether to stay an execution. *See, e.g., Ford v. Wainwright,* 477 U.S. 399, 411 (1986) (discussing special concerns arising in capital proceedings leading up to an execution); *Hearn v. Thaler,* No. 3:12–CV–2140–D, 2012 WL 2715653 (N.D. Tex., July 9, 2012) (Fitzwater, C.J.). The Court finds that it is in the interest of justice to transfer the motion to the Court of Appeals rather than dismiss.

## D.

## MOTION TO STAY EXECUTION

In connection with his motion to obtain Rule 60(b) relief, Rayford has filed an application to stay his execution, Stay App., doc. 110. This Court's jurisdiction to grant this motion relies upon jurisdiction to consider the motion to obtain Rule 60(b) relief. Because this Court lacks jurisdiction over the motion for Rule 60(b) relief, it lacks jurisdiction to rule on these motions as well. See

14

*Edwards v. Davis*, No. 3:10-CV-6-M, 2017 WL 253065, at \*5 (N.D. Tex. Jan. 19, 2017); *Hawkins v. Stephens*, No. 2:14-CV-314, 2015 WL 3882422, at \*1 (S.D. Tex. June 17, 2015) (Ramos, J.), *appeal dismissed* (5th Cir. Feb. 29, 2016) (citing *United States v. Key*, 205 F.3d 773, 775 (5th Cir. 2000); *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013) (holding that the court of appeals had jurisdiction over both the district court's transfer order and the motions it transferred thereby). It is in the interest of justice to transfer this motion to the Court of Appeals as well.

## V.

## ALTERNATIVE ANALYSIS OF ENTITLEMENT TO RELIEF

In the alternative, if Rayford's motion were made to seek Rule 60(b) relief properly within this Court's jurisdiction, he would again fall short of hid goal. Rayford has not presented the extraordinary circumstances required to warrant Rule 60(b) relief. In arguing that his motion presents extraordinary circumstances, Rayford argues the factors set out in *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

> (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

Motion, 15.

Regarding the first factor, Rayford argues that he has shown that his claims have merit, but Respondent disagrees. The Court finds that Rayford has not shown that, even with his additional

evidence, the outcome of these proceedings would be any different. Rayford's trial counsel enlisted the assistance of capable experts at trial and the new evidence does little more than show a disagreement between experts. It does not establish ineffective assistance of counsel.

Regarding the second factor, Rayford did not appeal the denial of funding. Rayford did not follow up on the Court's reasoning for denying funding with any further motions to obtain such funding. Instead, the current motion appears to be used as a substitute for an appeal.

Regarding the third factor, Rayford has not shown that granting the motion would serve substantial justice. He argues that the state reindicted him to charge capital murder two weeks before voir dire. *See* Motion, 17. Respondent argues that the reindictment came almost four months before trial, and he was granted ample expert and investigative assistance. *See* Response, 20-21. His other allegations are similarly disputed. Respondent argues that trial counsel obtained expert assistance to address the State medical examiner's testimony and thoroughly cross-examined her. Respondent argues that trial counsel put on a thorough mitigation case, as this Court and the state court have previously found. And although Rayford argues that his initial federal habeas counsel "suspected that Mr. Rayford had brain damage," she never requested funding for a mental health expert in the original habeas proceedings in this Court. Motion, 18. The Court finds that Rayford has not shown that granting the motion would serve substantial justice.

Regarding the fourth factor, Rayford does not present his complaints within a reasonable time. He complains of a denial of funding in 2009 and seeks to set aside a judgment rendered in 2012. He argues that he diligently acted upon the recent grant of funding by this Court as a basis for his current motion, but that order only granted funding for Dr. Richard L. Fulbright to perform expert mental health services for a neuropsychological evaluation. *See* Order, doc. 102. Dr.

16

Fulbright was not mentioned in Rayford's current motion and has not been shown to have made any contribution to the experts that were named. Since the denial of funding has not been shown to be a legitimate basis for Rule 60(b) relief, the recent grant of funding would not appear capable of satisfying this factor. And while this Court recently granted a motion to appoint the Federal Public Defender as co-counsel in this case, Rayford has been continually represented since current counsel was appointed on August 30, 2010. Order, Doc. 48.

Regarding the fifth and sixth factors, this Court reached and evaluated Rayfords claims on their merits. This late attempt to rectify suggested deficiencies in prior federal counsel's performance should not be enough to satisfy this factor.

Regarding the seventh factor, Rayford has thoroughly litigated this case, receiving the assistance of multiple federal habeas counsel and a remand from the Court of Appeals. The state and federal courts have taken such time in performing a thorough review of his claims that he presented a claim to the state court that he has been on death row too long to be executed. *See* SSHA, 130-141. Reopening his case would result in a further delay in carrying out the assessed punishment. Therefore, the equities would appear to favor avoiding any further delay in allowing the execution.

The Court is not aware of any other factors that would warrant Rule 60(b) relief. Therefore, if this Court were to consider Rayford motion under Rule 60(b), the motion would be **DENIED**.

## VI.

## ORDER

Rayford's motion for relief under Rule 60(b), doc. 109, is a successive application for habeas relief and is **TRANSFERRED** to the United States Court of Appeals for the Fifth Circuit along with the application to stay his execution, doc. 110. *See Henderson v. Haro,* 282 F.3d 862, 864 (5th Cir.

2002).

The Clerk of Court is **DIRECTED** to open for statistical purposes a new civil action (nature of suit 535 – death penalty habeas corpus – assigned to the same district judge) and to close the same on the basis of this Order.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. Petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Petitioner has previously been allowed to proceed in forma pauperis and this status is continued for purposes of appeal. *See* Order, Doc. 13.

**SO ORDERED** this 29th day of January, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE